Frank A. Sayles *vs*. John J. Foley.

Frank A. Sayles *vs*. John T. Blomquist.

JANUARY 26, 1916.

Present: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Workmen's Compensation Act.   Constitutional Law.*

A statute should be sustained unless its unconstitutionality is clear beyond a reasonable doubt.   A reasonable doubt is to be resolved in favor of the legislative action.

*(2)   Workmen's Compensation Act.   Constitutional Law.*

Pub. Laws, cap. 831, the "Workmen's Compensation Act," is not obnoxious to Cons. R. I. Art. I, § 2, providing that "all laws . . . should be made for the good of the whole; and the burdens of the State ought to be fairly distributed among its citizens."

*(3)   Constitutional Law.*

An objection to the constitutionality of an act, that it unjustly discriminates between employers and also deprives a minor of his property without due process of law will not be considered where the objectors are neither employers nor minors, since one who objects to a State statute as in violation of the federal constitution must bring himself by proper averments within the class as to whom the act is unconstitutional.

*(4)   Workmen's Compensation Act.   Constitutional Law.*

Pub. Laws, cap. 831, the "Workmen's Compensation Act," in regard to the classification of employers and employees in excluding certain of each class from its operation, is not obnoxious to Cons. U. S. Art. XIV of amendments, § 1, "nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws," since the act is neither arbitrary nor

unreasonable in its exclusion of employees in domestic service, and agriculture, casual employees, those receiving more than $1,800 a year, and employers of five or less workmen and their employees.

(5)   *Workmen's Compensation Act.   Constitutional Law.*

Without deciding whether the difference in situation between the employer and employee, arising from the acceptance or non-acceptance of the act by the employer, is a classification by the law itself, whatever of inequality results from it as to different employees arises from the fact that the abolishing of the three defences of the employer is not made universal, but is limited to actions against employers who do not accept the compensation scheme of the act.   The employee is deprived of no prior existing right.   The legislature has power to repeal these defences with or without attaching conditions and limitations in the act of repeal.

(6)   *Workmen's Compensation Act.   Constitutional Law.*

The Workmen's Compensation Act, Art. I, § 6, in providing that an employee of an employer who shall have elected to become subject to the provisions of the act, shall be held to have waived his right of action at common law to recover damages for personal injuries, if he shall not have given his employer notice of such claim and have filed a copy thereof with the commissioner of industrial statistics, is not coercive or compulsory, but optional.

(7)   *Workmen's Compensation Act.   Constitutional Law.   Due Process of Law.*

As before the occurrence of an accident there is no property right growing out of it, an employee who has previously accepted the provisions of a Workmen's Compensation Act, is not deprived of property "without due process of law."

(8)   *Workmen's Compensation Act.   Constitutional Law.   Trial by Jury.*

Where an employee has waived his right of action at common law, under a Workmen's Compensation Act, he has waived the right of trial by jury which is incident to such action.

(9)   *Workmen's Compensation Act.   Constitutional Law.*

Pub. Laws, cap. 831, the "Workmen's Compensation Act," Art. IV, in permitting an employer and his employees "to provide a scheme of compensation benefit or insurance in lieu of the compensation provided for in" the act, subject to the approval of the Superior Court, and in providing for the compensation features of the act becoming operative only at the option of the employer, is not subject to the objection of unconstitutionality on the first ground as a delegation of legislative authority where it does not appear that the parties in the case at bar have entered into any agreement for an alternative scheme of compensation and is not obnoxious on the second ground to Cons. R. I. Art. III and Art. IV, §§ 1 and 2, and Cons. U. S. Art. XIV, § 1 of amendments as a delegation of legislative authority, since the power given an employer to choose from two alternative schemes both completely defined by law and designed to afford compensation for an accident to another is not a delegation of legislative power, so long as the other is not bound by the employer's choice but is free to make his own choice.

PETITIONS for relief in accordance with the provisions of Pub. Laws, cap. 831.   Certified on constitutional questions.

BAKER, J.   These two cases are petitions by Frank A. Sayles as lessee and operator of the Glenlyon Dye Works, in the town of Lincoln, in this State, filed in the Superior Court for Providence County, October 16, 1913.   The petitioner as employer asks for relief against the two respondents as employees in accordance with the provisions of Chapter 831 of the Public Laws, entitled "An Act relative to Payments to Employees for Personal Injuries received in the course of their employment, and to the Prevention of such Injuries," commonly known as the "Workmen's Compensation Act."

The petitions allege, *inter alia*, that the respondents on the 14th day of January, 1913, were in the employ of the petitioner, but not in domestic service or agriculture; that on said 14th day of January they both received personal injuries by accident arising out of and in the course of said employment; that the petitioner had elected to become subject to the provisions of said act and had not withdrawn such election; that the respondents had waived their right of action at common law to recover damages for personal injuries received as aforesaid; that the petitioner had paid for reasonable medical aid and hospital services furnished to said respondents for the first two weeks after said injuries, in accordance with said act, and has been and is now willing to pay to them such weekly compensation as they are entitled to under the provisions of said act; but that they have at all times refused to receive any compensation under the terms of said act, and have begun actions at common law in said Superior Court for damages for said injuries by writs dated August 25, 1913.

To these petitions the respondents severally on November 1, 1913, filed motions to dismiss on the ground that Chapter 831 of the Public Laws is unconstitutional and void for reasons stated in the motions.   Without waiving his motion

each respondent answered said petition against him, either expressly or in effect admitting the above-named allegations of the petition excepting the statement that they "had waived their right of action at common law to recover damages for said personal injuries," although as to this they admit that they gave no notice to the petitioner in conformity with the provision of said act that they claimed such right of action.

They further answer and say that they are not bound by Chapter 831, because it is unconstitutional and void for ten stated reasons, as follows: (1) in that it violates Article I, § 2 of the Constitution of Rhode Island; (2) in that it violates Article XIV, § 1 of the Amendments to the Constitution of the United States; (3), (4), (5) and (6) in that it is discriminatory as to employees in the denial of the equal protection of the law; (7) in that it is coercive in effect and destroys the right of freedom of contract between employers and employees; (8) in that it unjustly discriminates between employers; (9) in that it deprives a minor of his property without due process of law and without just and adequate compensation; and (10) in that it delegates legislative power to (a) the Superior Court, and (b) to the employer in violation of Article III and Article IV, §§ 1 and 2 of the Constitution of Rhode Island, as well as Article XIV, § 1 of the Amendments of the Constitution of the United States.

The motions set up the same grounds of unconstitutionality except number (10).

Thereupon the Superior Court certified to this court the question of the constitutionality of "The Workmen's Compensation Act," Chapter 831 aforesaid.

In considering this question it is to be borne in mind that so far as any presumption exists on the point it is one in favor of the constitutionality of a legislative act. "The rule generally laid down is that statutes should be sustained unless their unconstitutionality is clear beyond a reasonable doubt. A reasonable doubt is to be resolved in favor of the

legislative action and the act sustained." *State* v. *District of Narragansett*, 16 R. I. 424, 440. See, also, *State* v. *Kofines*, 33 R. I. 211, 218, and 6 R. C. L. 97. The act under consideration is similar in its essential features to acts which during the last six years have been passed by the legislatures of many of the states of our country. According to a bulletin recently issued by the United States Bureau of Labor Statistics thirty-one states and the territories of Alaska and Hawaii now have workmen's compensation laws, and a similar Federal statute covers about one-fourth of the civilian employees of the United States. Ten of these laws were enacted in 1915. They have apparently been passed in response to a wide-spread public opinion that a common law action to recover damages for injuries suffered by employees from accidents while in the performance of their work under present industrial conditions is, in most cases, an imperfect and inadequate remedial instrumentality. Referring to this situation certain things may be mentioned as matters of common knowledge.. The conditions under which great numbers of persons, men, women and youth of both sexes, largely entirely unacquainted with each other, and speaking perhaps different languages, are assembled for the performance of their work, often produce a situation which renders some of the recognized defences of the employer to a common law action unreasonable and unfair to the worker. These same conditions which bring together, working in the presence of and about machinery often of a complicated and dangerous character, not infrequently in an overheated atmosphere and amidst the noise and din of operating machines, large groups of people of differing intelligence, experience, skill and personal characteristics, especially in respect of habits of attention and carefulness, result in large numbers of industrial accidents, notwithstanding the attempt by legislation and the effort of humane employers to eliminate them as far as is possible by the use of safety appliances and devices. On account of the characteristic imperfections of human beings accidents in no small number seem to be

inevitable under the conditions existing in many forms of present industrial employment. The remedial relief afforded by the ordinary forms of litigation is uncertain and long delayed. If damages are recovered they are received not when the disability is suffered and the relief is most needed, but long afterwards and then materially diminished in amount as a necessary result of the effort to recover them. Undoubtedly for one reason or another employees with meritorious cases sometimes fail to recover damages, while on the other hand, those with undeserving cases sometimes succeed in doing so. In the common law action there is no set standard as to the amount of damages recoverable and sometimes great inequality results in cases very similar in their facts. Under this system of litigation it seems clear that the great incidence of hardship and loss falls upon the employee, although at the same time it is often the source of injustice to the employer. Under it the court calendars have of late years been increasingly crowded with cases for the recovery of damages for injuries suffered in industrial accidents with as a consequence an increased burden upon the State in the matter of court expenses, and resulting additional delay in disposing of other pending cases. Legislation, therefore, which is in amelioration of such a condition is a matter affecting the public welfare. Considering the subject in its general aspects, if such legislation needs justification, it can be amply supported and upheld as a proper exercise of the police power. Citation of authorities on this point seems needless. Courts have almost uniformly declared legislation of this kind as to its general purposes and characteristics to be constitutional. Of course particular acts may contain provisions in conflict with the State or Federal constitutions. We will consider Chapter 831 to see whether it be thus objectionable.

If we first examine the question of the constitutionality of the act in its relation to Section 2 of Article I of the State Constitution we are of the opinion that the act is not in contravention of our fundamental law. The respondents

in their brief fail to point out wherein the unconstitutionality of the act lies as to Section 2. In the matter of *Dorrance Street,* 4 R. I. 230, on page 249, the court in referring to this section says it sets "forth principles of legislation rather than rules of constitutional law—addressed rather to the General Assembly by way of advice and direction, than to courts, by way of enforcing restraint upon the law-making power." The last clause of the section, namely, "the burdens of the State ought to be fairly distributed amongst its citizens," in *Brown University* v. *Granger,* 19 R. I. 704, on page 710, is said to be "intended to control . . . the framing of laws relating to taxation." Practically all of the somewhat numerous cases under this clause relate to the constitutionality of laws respecting taxation.

It will not be necessary to consider the eighth and ninth reasons in the respondents' answer in support of the claim of the unconstitutionality of the act as the respondents are neither employers nor minors. It is generally recognized to be the settled law "that one who would strike down a State statute as a violation of the Federal Constitution must bring himself by proper averments and showing within the class as to whom the act thus attacked is unconstitutional. He must show that the alleged unconstitutional feature of the law injures him, and so operates as to deprive him of the right protected by the Federal Constitution." *Southern Railway Co.* v. *King,* 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 550; *Plymouth Coal Co.* v. *Penn.* 232, U. S. 531, 544; *Jeffrey Mfg. Co.* v. *Blagg,* 235, U. S. 571, 576; *Sexton* v. *Newark District Telegraph Co.,* 84 N. J. Law, 85; *State* v. *Snow,* 3 R. I. 64, 75; *State* v. *Mylod,* 20 R. I. 632, 636; *Wheeler* v. *Contoocook Mills Corporation,* 77 N. H. 551, 553.

The classification of employers and employees by the present act is objected to as unreasonable and improper in its discriminations. The act absolutely excludes from its provisions "employees engaged in domestic service or agriculture" and their employers, "a person whose employment

is of a casual nature and who is employed otherwise than for the purpose of the employer's trade or business," and employees whose remuneration exceeds $1,800 a year, and it does not apply to "employers who employ five or less workmen or operatives regularly in the same business," unless such employers may elect to come within the provisions of the act by complying with Section 5, which specifies the manner of making the election.    Except when the employer of five or less workmen and his employees come within the compensation portion of the act by choice these excluded employers and employees are left to their remedies and defences under the common law action to recover damages (4) for personal injuries sustained by accident, as they existed at the time of the passage of the chapter in question.    The act applies to and covers all other employers and employees, that is, they are all primarily under Section 1 of the act, but may by election come under the remainder of the chapter.

The clause of the Federal constitution governing classification in legislation is at the end of Section 1 of Amendment 14 and reads as follows: "Nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws."    The general rule is that the classification shall be "according to general considerations and with regard to prevailing conditions."    It must be reasonable under the circumstances and not "palpably arbitrary or capricious."    In *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 576, it is stated: "This court has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amendment in the equal protection clause to take from the states the right and power to classify the subjects of legislation.    It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority."    In *Kidd* v. *Alabama*, 188 U. S. 730, 733, the court says: "We need not repeat the common places as to the large latitude allowed to the states for classification upon any reasonable basis," citing cases.    See, also, *Horton* v. *Old*

*Colony Bill Posting Co.,* 36 R. I. 507; *Miller* v. *Wilson,* 236 U. S. 373; *Bosley* v. *McLaughlin,* 236 U. S. 385; *Singer Sewing Machine Co.* v. *Brickell,* 233 U. S. 304; *Keokee Consolidated Coke Co.* v. *Taylor,* 234 U. S. 224; *International Harvester Co.* v. *Missouri,* 234 U. S. 199; *St. John* v. *New York,* 201 U. S. 633, 637.

Is the act under consideration arbitrary and unreasonable and so unconstitutional by virtue of its exclusion of employees in domestic service and agriculture, casual employees and those receiving more than $1,800 a year from within its provisions ? As to domestic and agricultural employees, if the legislature deemed the nature of their employment with, as a general rule, its intimate personal relations between the employer and his employees to be such that it would be proper to leave them both as to remedies for personal injuries arising from accidents in the course of their employment to the common law action and its defences we can not say that such classification is arbitrary and unreasonable, as there is a substantial difference between the condition of these employees and those where the obvious risks of the employment are greater and where the mere number of employees permits little opportunity for actual acquaintance.

In *Mackin* v. *Detroit-Timkin Axle Co.,* 153 N. W. (Mich.) 49, at pages 54-5, the court says, in discussing this point, "Stress is laid upon that feature of the law which exempts household servants, farm laborers, and casual employees from its provisions as being class legislation depriving them of equal protection under the law, and in that connection appropriating public money for the benefit of a certain class. . . . The law is unquestionable that it is within the power of the legislature to classify both employers and employees, if the classification is not fanciful or arbitrary and for reasons of public policy, is based upon substantial distinctions, is germane to the object sought to be accomplished by the act, not limited to existing conditions only, and applies impartially and equally to each member of the class. . . . Classifications of this nature, some of them

identical with that under consideration, have been sustained in several states where Workmen's Compensation Acts and other laws affecting industrial workers were under consideration," citing cases.

See, also, the *Opinion of the Justices*, 209 Mass. 607, 610; *Mathison* v. *Minn. Street Ry. Co.*, 126 Minn. 286, 293; *Western Indemnity Co.* v. *Pillsbury*, 151 Pac. Rep. 398, 403 (Cal.).

What has been said as to domestic and agricultural employees is pertinent as to the situation of employers of five or less workmen and their employees, that is, there is a real difference in such employments as to the danger of accident incidental to the bringing together of workers in large numbers. Therefore an attempt by legislation to recognize this difference by classification will be upheld as not palpably erroneous.

In *Jeffrey Mfg. Co.* v. *Blagg, supra*, pages 577, 578, the court says, in construing a similar provision of the Ohio Workmen's Compensation Act: "Not opening the door of the statute to those employing less than five, still leaving them to the obligations and rules of the common and existing statute law, the legislature may have believed that, having regard to local conditions, of which they must be presumed to have better knowledge than we can have, such regulation covered practically the whole field which needed it and embraced all the establishments of the State of any size, and that those so small as to employ only four or less might be regarded as a negligible quantity, and need not be assessed to make up the guaranty fund, or covered by the methods of compensation which are provided by this legislation. This is not a statute which simply declares that the defense of contributory negligence shall be available to employers having less than five workmen, and unavailable to employers with five and more in their service. This provision is part of a general plan to raise funds to pay death and injury losses by assessing those establishments which employ five and more persons and which voluntarily take

advantage of the law.   Those remaining out and who might come in because of the number employed are deprived of certain defenses which the law might abolish as to all if it was seen fit to do so.   If a line is to be drawn in making such laws. by the number employed, it may be that those very near the dividing line will be acting under practically the same conditions as those on the other side of it, but if the State has the right to pass police regulations, based upon such differences,—and this court has held that it has,—we must look to general results and practical divisions between those so large as to need regulation and those so small as not to require it in the legislative judgment.   It is that judgment which, fairly and reasonably exercised, makes the law; not ours.

We are not prepared to say that this act of the legislature, in bringing within its terms all establishments having five or more employees, including the deprivation of the defense of contributory negligence where such establishments neglect to take the benefit of the law, and leaving the employers of less than five out of the act, was classification of that arbitrary and unreasonable nature which justifies a court in declaring this legislation unconstitutional."

In *Borgnis* v. *The Falk Company*, 147 Wis. 327, on page 355, the court says:   "The minor classification by which the fellow servant defense is preserved to all employers employing less than four employees in a common employment is also attacked as having no proper legal basis; but it seems to us that the grounds of classification here are more persuasive even than in the case just discussed.   The man who is employed with one or two other men in a given employment in all reasonable probability knows their characteristics well, and will probably be with them a great part of the time. He will have ample opportunity to form a just judgment as to the risk of injury from their negligence which he will run if he works with them, and will be enabled to shape his own conduct accordingly; but the man who is one of a large number of men, many of whom he never sees, and some of

these latter having duties to perform in distant places, upon the due performance of which his own safety depends, has no opportunity to acquire any accurate knowledge of the characteristics of many of his fellow workmen, and cannot intelligently decide what risk he runs at the hands of such distant and unknown employees. The difference in situation is not merely fanciful; it is real. In one case, the employee knows or has the means of knowing what to expect from his co-laborers; in the other case, he has neither the knowledge nor the means of knowledge. Of course, there will be cases on the border line, where the difference in situation will be very slight, or perhaps entirely non-existent. There will probably be no practical differences between the situation of the man who is one of four or five employees in a given employment and the situation of the man who is one of three; but this does not militate against the legitimacy of the classification; this is a necessary defect in all cases of classification based upon numbers."

See, also, *State ex rel. Yaple* v. *Creamer*, 85 Ohio St. 349, 404; *Shade* v. *Ash Grove, etc., Cement Co.*, 92 Kans. 146; *State* v. *Evans*, 130 Wis. 381. The exclusion of the employees receiving more than $1,800 a year is not unreasonable as in most employments involving considerable danger to injury from accident the employee receiving such a salary or wage may be presumed to be exposed to less danger of accident than the ordinary workman. The same reason exists for excluding the casual employee. See *Mackin* v. *Detroit- Timkin Axle Co.*, *supra*. We find nothing unreasonable in the classification by exclusion of these classes from the act.

Strictly speaking this is all the classification made by the act, but the employer and his employee may change their relation under the law by voluntary action. Until the employer elects to come under its compensation scheme both the employer and employee remain, as to the rights of action for injury in the employment, under the common law, but the employer not so electing is deprived of the three defences, of contributory negligence, assumption of risk by the

employee and the negligence of a fellow servant. If the employer elects to become subject to the compensation provisions of the act, then every employee of his also has the opportunity of choosing to accept the compensation scheme or to retain his rights at common law. If the employee then claims his right of action at common law he retains it as it existed before the passage of the act, that is, the right of action subject to the three mentioned defences on the part of the employer. As a result of such positive choice on the part of each the situation between employer and employee is not the same as it is when the employer does not make the election to come under the compensation part of the act.

The respondents treat the differences in situation thus resulting as a classification by the law itself. Some courts have so treated it. We question the correctness of this. Without, however, definitely passing on the point, it will at present suffice to call attention to the fact that whatever of inequality results as to different employees arises from the fact that the abolishing of the three defences of the employer is not made universal, but is limited to actions against employers who do not accept the compensation (5) scheme of the act. The benefit to the employee results from and is wholly incidental to the depriving of the employer of what hitherto has been held to be his right. The employee is deprived of no prior existing right. The General Assembly has power to repeal these defences, originating in rulings of the court. *Munn* v. *Illinois*, 94 U. S. 113, 114, *Second Employer's Liability Cases*, 223 U. S. 1, 49, 50. It has the power to do this with or without attaching conditions and limitations in the act of repeal. We therefore are not prepared to say that the limitations contained in Chapter 831 are unreasonable or are arbitrary. See, also, *Mathison* v. *Minn. St. Ry. Co.*, *supra*, 286; *Borgnis* v. *Falk Co.*, *supra*, 327, 354; *Jensen* v. *Southern Pacific Co.*, 109 N. E. 600, 604 (N. Y.).

The respondents place some stress on the fact that an employee whose employer does not elect to become subject to the compensation scheme is given no opportunity to do

so and that therefore at least in that respect the act is unconstitutional. But both the respondents have had the opportunity to elect, as the petitioner long prior to, and at the time of, the accident was under the compensation part of the act. They therefore cannot raise this question as they are deprived of no right thereby. See cases cited above on the point as to who can raise a constitutional question. In this connection see, also, *Wheeler* v. *Contoocook Mills Corp., supra*, 554.

(6)    Another objection of the respondents is that the act is coercive. This is based on the provision of Section 6 of Article I of the act which provides that "an employee of an employer who shall have elected to become subject to the provisions of this act . . . shall be held to have waived his right of action at common law to recover damages for personal injuries," if he shall not have given his employer notice of such claim and have filed a copy thereof with the Commissioner of Industrial Statistics as provided by said section. Similar provisions have been the subject of court decisions in other states. In the *Opinion of Justices, supra*, on page 610, they said: "We see nothing unconstitutional . . . in providing as is done in part I, § 5, that the employee shall be deemed to have waived his right of action at common law if he shall not have given notice to his employer as therein provided. The effect of the provision referred to is to leave it to the employee's option whether he will or will not waive his right of action at common law." And see, also, *Young* v. *Duncan*, 218 Mass. 346, 352, for a reëxamination of this question and a reaffirmation of the opinion. In the last case the facts are similar to those in the *Foley* case before us. In *Mackin* v. *Detroit-Timkin Axle Co., supra*, on page 53, the court in considering this question says: "No constitutional provision is pointed out which prohibits the legislature, in framing this law to best avoid uncertainty and contention tending to litigation, from adopting a rule of conclusive presumption upon the question of notice so long as the employee was left in the first instance

free to forestall, overcome, or prevent such presumption by his own act if he so desired. This being true, the constitutional objections raised, which are necessarily founded upon the idea of coercion, disappear because the employee has had a free choice, and, by having failed to give notice, must be held to have elected his remedy under the Workmen's Compensation Law. Such legal presumptions are not unconstitutional nor uncommon. A familiar illustration is the conclusive presumption that a party entitled to jury trial in a civil action has waived his right and elected to go to trial without a jury unless he took some affirmative action and made demand before a certain time or point of progress in the case arrived."

In *Sexton* v. *Newark Dist. Tele. Co.*, *supra*, p. 95, the court says: "The legislature has seen fit to adopt a presumptive rule, leaving the parties to overcome the presumption by their own act, if they desire to do so. It has also seen fit to adopt the presumption in favor of Section 2, no doubt because it was thought that that offered the fairest basis for both employer and employee. It would have been quite as competent to have adopted either of the other alternatives suggested, but in its wisdom it has not seen fit to do so. Really the matter comes down to a question of presumption or burden of proof, which it is entirely within the control of the legislature to regulate so long as the parties are left entirely free to make whatever contract they choose, as they are in this case. We are therefore of the opinion that, as against the objection stated, Section 2 is constitutional."

In *Mathison* v. *Minn. St. Ry. Co.*, *supra*, on page 295, the court says on this point: "It is beyond question that the legislature has power to create this presumption and to require those who elect not to come under the provisions of Part 2, to give notice thereof in the manner prescribed. The act also provides the manner in which one who is subject to the provisions of Part 2 may thereafter change and not become subject thereto, and the manner in which one who is not subject to such provisions may thereafter change

and accept them.    The choice is no less voluntary and optional because a party is deemed to have accepted these provisions, unless he give notice to the contrary, than it would be if he were deemed not to have accepted them until he gave notice to that effect."

See, also, *Borgnis* v. *The Falk Co.*, *supra*, 327, 356; *Deibeikis* v. *Link-Belt Co.*, 261 Ill. 454, 465; *State ex rel. Yaple* v. *Creamer*, 85 Ohio St. 392, 394.

The compensation acts of Massachusetts, Michigan, Wisconsin, Illinois and Ohio are substantially like our own as to election and waiver.   In the New Jersey and Minnesota acts both employer and employee are at the outset placed under the compensation part of the act; each may elect to retain his right at common law.   Failing to so elect within the time stated they are held to have waived their common law right.   In other words, the presumption of waiver for failure to elect to remain under the common law is characteristic of them all.   They cannot be differentiated in this particular.

The case of *Kentucky State Journal Co.* v. *Workmen's Compensation Board*, 161 Ky. 562, is to the contrary.   In some respects the Kentucky act is unlike most other workmen's compensation acts.   It is lawful under it for an employee to contract with his employer to accept the compensation provided by the act and to accept the benefits thus conferred in lieu of any cause of action; and it is further provided that such a contract shall be conclusively presumed to be made in every case where the employer is under the act and the employee continues in his employment, such continuance being deemed a waiver by an employee of his right of action.   Although no employee was a party the court held it to be unconstitutional as to both employers and employees, basing its decision as to the employees upon Section 54 of the State Constitution, which is as follows: "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death or for injuries to person or property."   On page 569 the court

says: "When the employer accepts the provisions of this act, the employee is automatically drawn into this so-called contract and made subject to its provisions upon pain of being deprived of all his causes of action. It cannot then be said that he has voluntarily elected to accept the provisions of the contract because he is told that unless he accepts the provisions of this act he will be deprived of all these causes of action. . . . In the light of Section 54 of the Constitution, we must treat the contract made by the employee under the provisions of this act as compulsory, and therefore void." It is also held to be coercive to the employer because deprived of his common law defences if he does not come under the act. On a petition for a rehearing of this case, 162 Ky. 387, the court held the act as to the employer to be unobjectionable and constitutional; that an employee coming within its provisions may voluntarily agree to accept the provision fixing and limiting his recovery in case of injury; that the act however should provide for its acceptance by some affirmative act on the part of the employee; "silence on this subject should not be construed into acceptance." The act in its entirety is held to be void. This case is distinguishable from the cases already cited in that there is a conclusive presumption of a contract, in that the employee has no opportunity of electing to retain his common law right, but only the choice of remaining in his employer's service or of leaving it, and in that the State constitution has a provision as to the recovery of damages for personal injuries which is not in the constitution of our own State and, so far as we are informed, not in the constitutions of the other states mentioned. The two Kentucky opinions, somewhat conflicting in terms, do not therefore commend themselves as authoritative in the present case.

The following citation from *Young* v. *Duncan, supra,* 349, referring to the Massachusetts act is pertinent in its application to our own act. "It was not made compulsory in its application, but inducements were held out to facilitate its voluntary acceptance by both employers and employees.

It is manifest from the tenor of the whole act that its general adoption and use throughout the Commonwealth by all who may embrace its privileges is the legislative desire and aim in enacting it. The act is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design."

Our conclusion is that the act is not coercive or compulsory but optional.

Two other points which have been suggested, but not much discussed, may be here considered. The act by Section (7) 3 of Article V provides that it shall not apply to injuries sustained or to accidents which occurred prior to the day when it went into effect, namely, October 1, 1912. Inasmuch as before the occurrence of an accident there is no property right growing out of it, it is obvious that an employee who has previously accepted the act cannot claim that he has been deprived of property "without due process of law." *Young* v. *Duncan, supra,* 352; *Mackin* v. *Detroit-Timkin Axle Co., supra,* 51. The other point relates to trial (8) by jury. But if an employee has waived his right of action at common law he has, of course, waived the right of trial by jury, which is incident to such action. *Deibeikis* v. *Link-Belt Co., supra,* 466; *Sexton* v. *Newark Dist. Tele. Co., supra,* 101; *Hawkins* v. *Bleakley,* 220 Fed. 378, 381.

A further claim of the respondents is that the act is unconstitutional in that it delegates legislative power. This claim is based partly on Article IV of the act which permits an employer and his employees "to provide a scheme of compensation, benefit or insurance in lieu of the (9) compensation provided for in this act," subject to the approval of the Superior Court, and partly on the ground, as the respondents allege, that the compensation features of the act become operative only at the option or election of the employer.

Considering the first point, as it does not appear that the parties in the present case have entered into any agreement for an alternative scheme of compensation, the question of

the constitutionality of Article IV cannot now be raised under these petitions and consequently it will not be considered.

The other question is properly before us. It is an important one, as it goes to the root of every Workmen's Compensation Act which is elective in character, which acts include all such now in force, thirty-three in number, except the statutes of California, Washington, Maryland, Oklahoma and Wyoming, which are compulsory in some form.

In the brief of the respondents Point III is thus stated: "The entire compensation part of the act, exclusive of Section 1 under Article I, binds no person until the employer elects to be bound by it, and that is a delegation of legislative authority." The alleged delegation of authority is unquestionably the power given the employer to choose between two schemes of compensation contained in the same act under one of which the act by its terms places him. If Point III be a correct statement it would seem to follow that when thereafter the employee has the opportunity and the power to choose between the two methods of compensation there is a delegation of legislative authority to him. The only case cited in which this question appears to have been discussed is *Middleton* v. *Texas Power & Light Co.*, 178 S. W. (Texas Civil Appeals) 956. This case will be considered later. Twenty-four cases have been cited as having sustained the constitutionality of the workmen's compensation acts, and all of these, except *State* v. *Clausen*, 65 Washington, 156, and *Western Indemnity Co.* v. *Pillsbury et al.*, 151 Pac. 398 (Cal.), have the elective feature. In the *Opinion of the Justices, supra,* on page 611, this appears: "There is nothing in the act which compels an employer to become a subscriber to the association, or which compels an employee to waive his right of action at common law and accept the compensation provided for in the act. In this respect the act differs wholly so far as the employer is concerned from the New York statute above referred to." The reference is to the statute, compulsory in character, under which

the opinion in *Ives* v. *So. Buffalo Ry. Co.*, 201 N. Y. 271, was given. It is apparent that the *Opinion of the Justices, supra,* implies that the proposed act was constitutional in the respect referred to because it was optional and not compulsory. In many of the cases upholding these acts the fact that they are optional seems to be assumed as one of the fundamental grounds of their constitutionality. Considering the fact that the validity of these laws has been called in question, on many grounds, before so many different courts by presumably able and acute counsel, it is not without significance that the point now discussed has been raised but once.

Returning to the consideration of *Middleton* v. *Texas Power & Light Co., supra,* 957, Section 3 of the Texas act, says the court, "takes away any and all rights of action by employees of subscribers against their employers for damages and personal injuries and provides that they shall look for compensation solely to certain insurance associations or companies." After some discussion in which it mentions that "in several states . . . it has been left optional with both employer and employees to accept the terms of the law, the court says, "The statute presents to the employer two laws differing widely and radically concerning his liability to his employee and permits him to choose without the consent of his employee which of these two laws shall fix the right of his employee as against him. . . . Has the legislature the power to enact a law that embodies such a fundamental and far reaching discrimination in favor of the employer and against the employee ? After a careful and patient consideration, we think it is clear that this question must be answered in the negative and that feature of the statute be declared unconstitutional." And further on it says: "It seems to us that it must be held that it is beyond the domain of legislative power to confer upon any person authority to say what particular law or which of two particular laws shall govern his right and the right of his employee as between them." Obviously this case does

not support the respondents' position. It attaches no importance to the mere power to elect between what it calls "two laws" as a basis of finding the act unconstitu-. tional. Indeed, it suggests on page 960 that with the power of election by both employer and employee no invalidity would exist, and its objectionable character is found in the provision that the employer is given the power to choose what right of action his employees may have against him. The three cases, *Ives* v. *So. Buffalo Ry. Co.; Kentucky State Journal Co.* v. *Workmen's Compensation Board,* and *Middleton* v. *Texas Power & Light Co.*, all *supra*, are the only cases cited as holding workmen's compensation acts unconstitutional. The grounds of these decisions have been pointed out. Under an amended constitution in New York an optional act has since been held valid. See *Jensen* v. *Southern Pacific Co.*, 109 N. E. 604. In two other cases such laws have been held unconstitutional in some particulars. In *Courter* v. *Simpson Construction Co.*, 264 Ill. 488, a provision for review by the Supreme Court by *certiorari* was held invalid, and in *Cunningham* v. *N. W. Improvement Co.*, 44 Mont. 180, it was similarly held because the act subjected an employer to pay twice for an injury in that he was not protected from an action at law after paying compensation under the act. The act is discussed in detail and is otherwise held constitutional.

Counsel for the petitioner and respondents have discussed the question of delegation of legislative power in an able and interesting manner and have cited numerous cases, all of which have been examined, but which it does not seem necessary for present purposes to cite or discuss. It seems to us that the discussion has taken an unnecessarily wide range and gone far beyond the precise point involved. It is to be borne in mind that the act was complete when it passed the General Assembly. The completeness of a statute when it leaves the hands of the legislature is one of the strongest proofs that it is not a delegation of legislative power. 6 R. C. L. 165. It was not left to go into effect

upon a contingency. It has been in effect as to all employers and employees covered by its provisions since October 1, 1912. By its terms it affords to the employer and employee a choice of remedies or procedure for the determination of their mutual rights and liabilities relative to a transaction or occurrence, as it may happen in the future. There is an existing procedure affording remedies and defences under which both are placed at the start. There is in addition a scheme for compensation for injuries, clearly defined in the act, which is entirely elective and which is available to neither employer nor employee until accepted by both. The employer has the first move, so to speak. If he does not elect, the parties remain under the common law as modified by the statute itself, the employee with his previous rights undiminished and the employer shorn of some of his previous defences. If the employer elects to come under the compensation scheme of the statute, the employee then has the opportunity of electing by positive act to remain under the common law and to preserve his remedies thereunder for future accidents or by inaction to tacitly accept the compensation features of the act. The power given to an employer to choose from two alternative schemes, both clearly and completely defined by the law and designed to afford compensation for an accident to another is not a delegation of legislative power, so long as that other is not bound by the employer's choice, but is left free to make his own choice. The choice afforded them severally and jointly is not dissimilar in principle to the choice of remedies afforded a plaintiff in certain circumstances. See Ency. Pl. & Pr. Vol. 7, 360. Instances are not infrequent of there being a right of action at common law and a statutory action of later origin on essentially the same facts, as concurrent or coexisting remedies, with the right of election between them. In the ordinary case a choice of remedy by plaintiff or complainant is conclusive and determines the character of the litigation. Under the present law the choice of both parties must concur to bring them

under the compensation scheme of the act and to fix their mutual rights and liabilities as to compensation for future accidents. It is a somewhat unusual and extended application of the doctrine of the election of remedies, but it does not involve a delegation of legislative power.

Other questions have been discussed in the briefs which have been considered, but in our judgment, they do.not in this opinion require special comment.

For the reasons stated we are of the opinion that Chapter 831 of the Public Laws is not unconstitutional in respect of any provisions of Federal or State constitution stated in the respondents' answer and motions to dismiss and certified to this court, in so far as we have found that they were properly raised for our consideration.

The papers in the two cases will be sent back to the Superior Court for the Counties of Providence and Bristol with our decision certified thereon for further proceedings.

*Gardner, Pirce & Thornley, Charles R. Haslam*, of counsel, *Claude R. Branch, Edwards & Angell*, for petitioner.
*Philip S. Knauer, Walter J. Ladd*, for respondents.