## BUCKSTAFF BATH HOUSE CO. *v.* McKINLEY, COMMISSIONER OF THE DEPARTMENT OF LABOR OF ARKANSAS, ET AL.

No. 201. Submitted December 4, 1939.—Decided December 18, 1939.

*Mr. Terrell Marshall* submitted for petitioner.

*Mr. W. L. Pope* submitted for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Section 901 of the Social Security Act (49 Stat. 620) levies an excise tax, equal to specified percentages of total wages paid, on "every employer" of eight or more persons with respect to their "employment." By § 902 the taxpayer may credit against this tax the amount of contributions paid by him into an unemployment fund under a state law; such credit however not to exceed 90 percent of the tax and to be allowed only for contributions made

under the laws of states approved and certified by the Social Security Board in accordance with the standards prescribed in § 903. By § 907 the term "employment" is defined to mean "any service, of whatever nature, performed within the United States by an employee for his employer" except, *inter alia,* service performed "in the employ of the United States Government or of an instrumentality of the United States."

Petitioner is an Arkansas corporation, organized for profit and with its only place of business situated on the United States Government Reservation known as Hot Springs National Park. It operates a bath house, which it erected and equipped, under a long term lease from the Secretary of the Interior. By the terms of that lease the operation and use of the bath house facilities are subject to certain control by the Department of the Interior, which in the main relate to the number of bath tubs which may be used, the charges to the public, the qualifications of employees, the maintenance and care of the premises, a prohibition of employment of agents to solicit patronage, and control over an assignment or transfer of the lease or any interest therein.

Respondents are officials of the State of Arkansas charged with the duty of enforcement of the Arkansas Unemployment Compensation Law,[1] an act reciprocal to, and integrated with, the Social Security Act.[2] Pursuant to that act respondents sought to collect from petitioner as an employer the required contributions for the calendar year 1937. Petitioner paid into the Treasury of the United States the tax required by the Social Security Act

---

[1] Act No. 155, approved February 26, 1937; Pope's Digest, §§ 8549 *et seq.*

[2] The Arkansas Unemployment Compensation Law was certified and approved by the Social Security Board under § 903 on March 9, 1937. See Third Annual Report of the Social Security Board, 1938, p. 175.

for that period. But it refused to pay the state tax and sued in the state court to enjoin its collection on the grounds, *inter alia,* that it is an instrumentality of the United States and that certain acts of Congress and statutes of Arkansas exempt it from such taxation. The Supreme Court of Arkansas affirmed a decree sustaining a demurrer to the bill and dismissing it, on the grounds that the Arkansas statute was applicable to petitioner and that, on construction of the acts in question, petitioner did not have the claimed immunity. We granted certiorari because that decision was asserted to be repugnant to the acts vesting exclusive juridiction over the Hot Springs Reservation in the United States.

Petitioner's contention here, as below, is based primarily on the Act of Congress. of March 3, 1891 (26 Stat. 842) whereby the consent of the United States was given "for the taxation, under the authority of the laws of the State of Arkansas applicable to the equal taxation of personal property in that State, as personal property, of all structures and other property in private ownership on the Hot Springs Reservation." [3] Petitioner points

---

[3] The cession act of Arkansas was Act No. 30; approved February 21, 1903. It "ceded and granted" to the United States "exclusive jurisdiction" over the area in question "to be exercised so long as the same shall remain the property of the United States; provided, that this grant of jurisdiction shall not prevent the execution of any process of the State, civil or criminal, on any person who may be on such reservation or premises; provided, further, that the right to tax all structures and other property in private ownership on the Hot Springs reservation accorded the State by the Act of Congress approved March 3, 1901, is hereby reserved to the State of Arkansas." This cession was accepted by the Act of Congress of April 20, 1904 (33 Stat. 187). As to Arkansas' asserted right to tax property in the reservation prior to the Act of Congress of March 3, 1891, see *Ex parte Gaines,* 56 Ark. 227.

For earlier Acts of Congress dealing with the rights of the United States to the Hot Springs Reservation see 4 Stat. 505; 20 Stat. 258. The early history of conflicting claims to these hot springs is reviewed

out that the tax imposed by the Social Security Act against which appropriate credits may be made for contributions under state laws is laid, as stated by this Court in *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 578, "as a duty, an impost or an excise upon the relation of employment"; and that as held by the Supreme Court of Arkansas the tax in question is "not a tax on personal property; nor is it, in any sense, a property tax." Therefore, petitioner concludes that the United States did not confer on the state of Arkansas the power to impose such a tax but retains its sovereign jurisdiction in that regard since the power of Arkansas to tax was limited to the enumerated property taxes.

We agree with the Supreme Court of Arkansas that the state had jurisdiction to impose the tax in question.

There can be no question but that petitioner is liable for the tax levied by § 901 of the Social Security Act, unless it is exempted by that portion of § 907 which relieves "an instrumentality of the United States" from that duty. But it seems clear that petitioner is not, within the meaning of the Social Security Act, such an instrumentality. The mere fact that a private corporation conducts its business under a contract with the United States does not make it an instrumentality of the latter. *Fidelity & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319. Petitioner's lease from the Secretary of the Interior did not convert it into such an instrumentality. Petitioner "is engaged in its own behalf, not the government's, in the conduct of a private business for profit." See *Federal Compress & Warehouse Co.* v. *McLean,* 291 U. S. 17, 23. Though it acts with the Government's permission and has received a privilege from the Government, it does not exercise that privilege on behalf of the latter. See *Broad River Power*

in the *Hot Springs Cases,* 92 U. S. 698. See also *Arlington Hotel Co.* v. *Fant,* 278 U. S. 439.

*Co.* v. *Query,* 288 U. S. 178, 180. The control reserved by
the Government for protection of a governmental pro-
gram and the public interest is not incompatible with the
retention of the status of a private enterprise. See *Fed-
eral Compress & Warehouse Co.* v. *McLean, supra.* That
control, being wholly supervisory, is not to be differen-
tiated from the type of control which the United States
may reserve over any independent contractor without
transforming him into its instrumentality. See *James* v.
*Dravo Contracting Co.,* 302 U. S. 134, 149. In effect, peti-
tioner concedes the point by admitting its liability under
the Social Security Act.

That petitioner is subject to the Social Security Act is
extremely relevant to the solution of the problem at hand.
For that Act laid the foundation for a coöperative en-
deavor between the states and the nation to meet a grave
emergency problem. As pointed out by this Court in
*Steward Machine Co.* v. *Davis, supra,* p. 588, that Act
was an attempt to find a method by which the states and
the federal government could "work together to a com-
mon end." Prior thereto many states had "held back
through alarm lest, in laying such a toll upon their indus-
tries, they would place themselves in a position of eco-
nomic disadvantage as compared with neighbors or
competitors," *id.,* p. 588. The Act was designed therefore
to operate in a dual fashion—state laws were to be
integrated with the federal Act; payments under state
laws could be credited against liabilities under the other.
That it was designed so as to bring the states into the
coöperative venture is clear. The fact that it would
operate though the states did not come in does not alter
the fact that there were great practical inducements for
the states to become components of a unitary plan for
unemployment relief. It is this invitation by the Con-
gress to the states which is of importance to the issue

in this case. For certainly, under the coördinated scheme which the Act visualizes, when Congress brought within its scope various classes of employers it in practical effect invited the states to tax the same classes. Hence, if there were any doubt as to the jurisdiction of the states to tax any of those classes it might well be removed by that invitation, for in absence of a declaration to the contrary, it would seem to be a fair presumption that the purpose of Congress was to have the state law as closely coterminous as possible with its own. To the extent that it was not, the hopes for a coördinated and integrated dual system would not materialize.

Hence, it is our view that on the facts of this case, Congress has given Arkansas implied authority to tax petitioner under its Unemployment Compensation Law since the Congress has included under the Social Security Act employers such as petitioner. Clear evidence of a contrary intention would, of course, negative the existence of the implied authority. But here there is none. That conclusion is strengthened by the exemption of certain classes of employers from the sweep of the federal Act. Thus, the exclusion of federal instrumentalities from the scope of the federal Act, and hence from the complementary state systems, emphasizes the purpose to exclude from this statutory system only that well defined and well known class of employers who have long enjoyed immunity from state taxation. Had it been desired to exempt the equally well known class, of which petitioner is a member, so as to save it from reciprocal state systems, it would seem that an equally clear exception would have been made.

Whether the same result would follow in case the cession act had absolutely forbidden a state to impose any tax on petitioner we need not decide. For here Arkansas did have a prior express power to tax petitioner's property. The implied authority which we here find to

exist is therefore used not to override an earlier express authority but merely to extend it to a degree. For in final analysis the Arkansas tax does have some relation to the use of petitioner's property. The existence of the implied authority does not therefore do violence to the earlier statutory grant.

*Affirmed.*

Mr. Justice Reed concurs on the ground that the Act of Congress of March 3, 1891 (26 Stat. 842) in which the United States consented "for the taxation . . . as personal property, of all structures and other property in private ownership on the Hot Springs Reservation," should be interpreted to give consent to the application of the Arkansas Unemployment Compensation Law. *Collins* v. *Yosemite Park & Curry Co.,* 304 U. S. 518, 532, 534.