FIRST STATE BANK OF GAINESVILLE
v. THOMAS, Collector of Internal
Revenue.

No. 372.

District Court, N. D. Texas, Dallas Division.

May 22, 1941.

O. D. Brundidge, of Dallas, Tex., for plaintiff.

John A. Erhard, Asst. U. S. Dist. Atty., of Dallas, Tex., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, and Alexander Tucker, Sp. Assts. to the Atty. Gen., for defendant.

ATWELL, District Judge.

The facts are stipulated. Briefly, and somewhat summarily, they show that the plaintiff is a private corporation existing under the banking law of Texas, with its principal place of business in Gainesville. It was chartered in 1905, with an amendment in 1919.

The defendant is the duly qualified and acting Collector of Internal Revenue at Dallas.

The tax collected and sought to be recovered is an excise tax provided for in the Social Security Act, 42 U.S.C.A. § 301 et seq., for the years 1937, 1938 and 1939. After the collection, demand for a refund was made by the plaintiff. Refund was refused.

The corporation has a capital stock of $65,000, privately owned and held. Its deposits exceed $1,000,000, and its annual dividend is approximately five per cent. It pays no interest to either private, state, county, or municipal depositors. Warrants of Cooke County, and of the City of Gainesville, were cashed and discounted at one per cent. State funds were handled for twenty-two years. In 1937 it handled

850

the funds for the liquidated Ringgold State Bank, for the Arlington State Bank, and for the Ben Franklin State Bank. It also handled the same funds for the same liquidations in 1939. For each of those two years, the funds of those three institutions aggregated about $36,000. For the year 1939, it continued to handle the Ringgold State Bank liquidation funds in the sum of $2,000. It handled school funds apportioned to the City of Gainesville, contributed by the federal government, by the State of Texas, the County of Cooke, and the City of Gainesville, in the aggregate sum of approximately $393,-000. It handled for the years 1937, 1938 and 1939, state and county funds for the Girls Training School of the State for delinquent girls, which school is situated at Gainesville. Those funds aggregated, for those years, approximately $15,000.

During the same three years, it cashed various warrants drawn by the County of Cooke, in connection with the WPA projects, and also city warrants for the City of Gainesville.

During that time, the plaintiff was not a member of the Federal Reserve System, but operated exclusively under the direction and control of the Commissioner of Banking of the State of Texas.

During those years, the capital stock remained the same, and loans were in excess of $350,000, and it engaged in other usual banking activities. It paid federal capital stock taxes, state franchise taxes, Texas unemployment taxes, for a portion of 1937, Texas stamp tax on mortgages, ad valorem taxes to the state, county and city, and federal income taxes for the years in question.

It claims exemption under Sec. 811(b) (7) of the Social Security Act, as it stood before the amendment of 1939, 42 U.S.C. A. § 1011(b) (7). That exemption provided, "Service performed in the employ of a State, a political subdivision thereof, or an instrumentality of one or more States or political subdivisions."

On April 26th, 1937, the state legislature amended Article 492 of the Revised Statutes of Texas, Vernon's Ann.Civ.St.Tex. art. 492, by declaring that "all corporations created under this title are hereby declared to be charged with the public use, and shall be under State control and be subject to such legislation as the Legislature may enact for the government and regulation of such banking institutions in this State. Such corporations shall be deemed to be instrumentalities and agencies of the State Government and shall be charged with the duty, when lawfully designated thereto, to act as depositories for the public funds of this State, and of any County, Municipality, City, Town or Village * * * and such corporations shall be further charged with the duty to act as fiscal agent for the State, or any County, City, Town or Village, or any subdivision within this State upon request so to do and upon reasonable compensation therefor." (Italics added).

The plaintiff contends that the National Security Act, partly quoted above, and the act of the Legislature, just quoted, clearly show it to be an instrumentality of the state government, and, therefore, exempt from the tax which has been collected from it.

The question, quite simply, is whether the state may declare that to be an instrumentality, which is, in fact, not an instrumentality, and thereby bring a private banking corporation which exists for personal profit, within the exemption of the National Taxing Act, before the amendment of 1939, which became operative on January 1, 1940.

The reason for the 1937 definition of instrumentality, and the placing of certain duties upon state banking institutions, appears from the emergency clause of the act, Acts Tex.1937, c. 205, § 3. That clause declares that the present laws are indefinite and uncertain, "as to whether or not banking institutions organized under the laws of this State are agencies and instrumentalities of the State Government, and the fact that national associations have been held to be instrumentalities and agencies of the United States Government, and the further fact that such constructions and interpretations of statutes should operate without discrimination against corporations engaged in the banking business, create an emergency," etc.

Apparently, from the emergency provision, the act was for the purpose of giving the state bank the same opportunities and the same exemptions as other state banks which had taken advantage of the Federal Reserve entry right.

The doubt that such a method may legally create an instrumentality is so great that it must be observed. That which is

not an instrumentality may not be made so because it is competitively handicapped.

■ The plaintiff is a private banking institution, carrying on its own business for private profit without any supervision or control by the state, save and except such supervision and control as is recognized for the benefit of the depositing customer, and the public. A public purpose does not mean government function. State of North Dakota v. Olson, 8 Cir., 33 F.2d 848, 852.

■ The amount of business which it handled for city, state and county, as above enumerated, is rather small, when compared to its entire business. That is an instrumentality of the state which is governmental. There must be state ownership —not private property. There must be a showing of burden on the state by the imposition and collection of the tax. Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L. Ed. 1337; Morgan v. Commissioner, 309 U. S. 78, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Helvering v. Bowers, 303 U.S. 618, 58 S.Ct. 525, 82 L.Ed. 1083; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Morrow v. Scofield, 5 Cir., 116 F.2d 17.

■ These cases caution us that the state law creates legal interests and rights. But the federal revenue acts designate what interests or rights, so created, shall be taxed. Hence, we go behind the definition of the state legislature as disclosed in this act in order to determine the real meaning of the word "instrumentality," as used in the Federal Taxing Act. Upon discovery that the thing at which the federal act is directed—is the thing that the national government intends to tax—the levy will be sustained, regardless of what name is given it by the state, if such taxing is not burdensome to some state governmental function. Observations in the Burk-Waggoner Oil Association v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183, afford an illustration.

There are many expressions which show what the national government meant by the term "instrumentality." It is not apparent from the banking laws of Texas that the banks organized thereunder, and particularly the plaintiff, are created for the purpose of acting as state agencies, or,

affording the state a means of exercising its power or duty.

■ The United States may not tax instrumentalities which a state employs in the discharge of its essential governmental duties. Governmental duties means those duties which the framers of the Constitution intended each member of the union of states would assume in order adequately to function under the form of government guaranteed by that Constitution. It would be inexcusable to do more than cite some well-known cases in this field. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427; Helvering v. Therrell, 303 U.S. 218, 58 S.Ct. 539, 82 L.Ed. 758; McLoughlin v. Commissioner, 303 U.S. 218, 58 S.Ct. 539, 82 L. Ed. 758; State of North Dakota v. Olson, 8 Cir., 33 F.2d 848.

A case, interesting because of its completeness, is that of South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737. The court looked squarely at the suggestions that the power of the national government should be so limited in the imposition of excises as to not impede or embarrass a state in the discharge of its functions. It agreed with that suggestion but determined that whenever a state engages in a business which is of a private nature, that business is not withdrawn from the taxing power of the nation.

The plaintiff's business is in no sense that of the state. It is a private venture recognized and chartered by the state. That the state may have it perform some errand for it, does not transform it from a private, profit-making business into a state instrumentality. See, also, Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328; Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; Manhattan Co. v. Blake, 148 U.S. 412, 13 S.Ct. 640, 37 L.Ed. 504; Baltimore Shipbuilding & Dry Dock Co. v. Baltimore, 195 U.S. 375, 25 S.Ct. 50, 49 L.Ed. 242; Fidelity & Deposit Company v. Pennsylvania, 240 U.S. 319, 36 S.Ct. 298, 60 L. Ed. 664; Buckstaff Bath House v. McKinley, 308 U.S. 358, 60 S.Ct. 279, 84 L. Ed. 322; Texas Unemployment Compensation Commission v. Metropolitan Building, etc., Tex.Civ.App., 139 S.W.2d 309. United States v. Query, D.C., 37 F.Supp. 972.

The necessity for recognizing and maintaining the nation, and each of the state governments with its full constitutional power and right to function independent of, and free from, infringements, or burdens of the other, cannot be minimized nor overlooked.

When local government atrophies and the national reach grows stronger and more determined, decay begins. The perpetuity of our way rests upon the continuity of the blended, dual system. In sustaining the motion of the defendant for judgment, nothing is done that ignores the sovereign rights of the state of Texas.

The cause is dismissed.