In re WM. AKERS, JR., CO., Inc.

SECRETARY OF LABOR AND INDUSTRY OF PENNSYLVANIA v. EPP.

In re FIDELITY FUEL CO.

BUREAU OF EMPLOYMENT & UNEMPLOYMENT COMPENSATION OF DEPARTMENT OF LABOR & INDUSTRY OF PENNSYLVANIA v. LITTLETON.

In re UMANS BLEACHERY, Inc.

STATE OF NEW JERSEY v. MORRILL.

Nos. 7411, 7495, 7622.

Circuit Court of Appeals, Third Circuit.
June 30, 1941.

---

No. 7411:

David R. Perry, of Harrisburg, Pa. (Claude T. Reno, Atty. Gen., on the brief), for appellant.

Sidney Chait, of Philadelphia, Pa. (Hirschwald, Goff & Rubin, of Philadelphia, Pa., on the brief), for appellee.

No. 7495:

David R. Perry, of Harrisburg, Pa. (Claude T. Reno, Atty. Gen., on the brief), for appellant.

Howard H. Rapp, of Philadelphia, Pa. (Martin P. Snyder, of Philadelphia, Pa., on the brief), for appellee.

Herman D. Ringle, and Charles A. Malloy, both of Trenton, N. J., amici curiae.

No. 7622:

Herman D. Ringle, of Trenton, N. J. (Charles A. Malloy, of Trenton, N. J., on the brief), for appellant.

William Harris, of Newark, N. J., and Mendon Morrill, of Paterson, N. J. (Harry A. Pechenik, of Newark, N. J., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

■ These cases suffered from casual presentation in the courts below. The hopelessness of bankruptcy seems to paralyze the zeal and skill of litigants and counsel alike. The issue is an important one. It is the position of unemployment compensation payments in Federal bankruptcy. Although there are three cases and two jurisdictions, the question is by concession single. The Pennsylvania appeals are from the affirmance by two different judges of a referee's order deny-

ing priority under the Bankruptcy Act.[1] In New Jersey a referee had decided that property sold "subject to taxes and assessments" was sold subject to the unemployment compensation payments. His holding was reversed by the District Court.[2] Subsequently, the same learned district judge affirmed the same referee's compliance therewith in the proceedings to establish priority.

▮▮ The principle underlying tax priority is ancient and well-established. It is one of the many illustrations of the maxim "salus populi suprema lex est". Mr. Justice Story gave it expression and effect over 100 years ago.

"The right of priority of payment of debts due to the government, is a prerogative of the crown well known to the common law. It is founded not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts. The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes. The same policy which governed in the case of the royal prerogative, may be clearly traced in these statutes; and as that policy has mainly a reference to the public good, there is no reason for giving to them a strict and narrow interpretation. Like all other statutes of this nature, they ought to receive a fair and reasonable interpretation, according to the just import of their terms." United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L.Ed. 308.[3]

This admonition has been followed in the overwhelming weight of authority.[4]

▮▮ The acts of both statutes refer to the payment as a "contribution". The laws provide that delinquencies are to be collected in New Jersey by an "action at law"[5] and in Pennsylvania by a "civil action".[6] The New Jersey statute declares the contributions "shall be a personal debt"[7] and the Pennsylvania Act gives the contributions priority over other claims "except taxes".[8] The use of the generic term debt for an obligation to the state is frequent in bankruptcy and insolvency laws.[9] It occurs in the na-

---

[1] We agree with the District Court that the statute applicable is the Bankruptcy Act as amended by the so-called Chandler Act, 11 U.S.C.A. § 104, sub. a; In re Old Algiers, 2 Cir., 100 F.2d 374; In re Philadelphia & Reading Coal & Iron Co. (Appeal of Schrager), 3 Cir., 105 F.2d 357; cf. Applicability of Chandler Act to Pending Reorganizations, 33 Illinois Law Review 462 (note). Such a ruling of course eliminates any incorporation of the state priority laws, Bankruptcy—Priority of Tax Claims—Social Security Contribution, 40 Columbia Law Review 1241 (note).

[2] In re Umans Bleachery, Inc., D.C., 34 F.Supp. 694.

[3] Cf. Blair, Priority of United States in Equity Receiverships, 39 Harvard Law Review 1, 19.

[4] In re Oshkosh Foundry Co., D.C., 28 F.Supp. 412; In re Willett-Baker Lumber Co., D.C., 31 F.Supp. 130; In re Mid America Co., D.C., 31 F.Supp. 601; In re James Mytinger, D.C., 31 F.Supp. 977; In re De Graw Motor Co., 4 Prentice Hall Unemployment Ins. Serv. Neb. para. 27,581, p. 27, 111; In the Matter of Siegelbaum's Inc., D.C., 38 F.Supp. 1009; In re Independent Automobile Forwarding Corp., 2 Cir., 118 F.2d 537; cf. In re Lambertville Rubber Co., 3 Cir., 111 F.2d 45; In re Sixty-Seven Wall St.

Restaurant Corp., D.C., 23 F.Supp. 672; City of New York v. Feiring, May 26, 1941, 61 S.Ct. 1028, 85 L.Ed. ——; Bankruptcy—Priorities—Sales Tax Claim Against Bankrupt Vendor Held Not Entitled to Priority, 54 Harvard Law Review 1390.

In fact only the dictum of one district judge who afterwards reversed himself supports a contrary view. In re Mid America Co., D.C., 31 F.Supp. 601, 604; In Re Mosby Coal & Mining Co., D.C., 24 F.Supp. 1022; In re Lechtman Printing Co., D.C., 38 F.Supp. 1008.

[5] N.J.R.S. 43:21-14, as amended (1939) Chap. 309, N.J.S.A. 43:21-14.

[6] Penna.P.L. (1937) 2897, § 309, as amended P.L. (1937) 658, § 3, 43 Purdon's Stat.Ann. § 789.

[7] N.J.R.S. 43:21-14, as amended (1939) Chap. 309, N.J.S.A. 43:21-14.

[8] Penna.P.L. (1937) 2897, § 310, 43 Purdon's Stat.Ann. § 790.

[9] Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373; In re Sherwoods, 2 Cir., 210 F. 754, Ann.Cas.1916A, 940; Kaw Boiler Works v. Shull & Sanderson, 8 Cir., 230 F. 587, L.R.A.1916E, 628; In re Fisher & Co., D.C., 148 F. 907; Taxation—Receivers—Taxes as Debts Under United States Priority Statutes, 39 Harvard Law Review 784 (note). Cf. Bankruptcy—Taxes—Debts—Priority

tional bankruptcy act itself.[10] So, also, the method of collection of the particular debt due the sovereign has no significance.[11] The state can direct any constitutional method for the collection of its obligations.[12] The suggestion that a different result would follow from the inclusion of the word "other" before taxes as well as before claims in the phrase "priority over" etc. would indeed put a premium on the tag. The phrase as written effects not a distinction from but a similarity to.[13]

There is more than a question of nomenclature involved in a determination of the character of the exaction of these unemployment compensation acts.[14] Their true nature had given the draftsmen some concern and for an obvious reason. Up-

on its resolvement might depend their ultimate constitutionality.[15] This because the taxing power has served as an excuse for greater judicial flexibility. The question is not answered by emphasis on compulsion. There are, at least, three other forms of governmental exaction which have been held not to be taxes. We refer to fees or assessments for special services or benefits, penalties for the determining of socially undesirable acts and finally the regulatory expropriation of money from one group to another.

Clearly the line here runs between tax and regulatory expropriation. As the Supreme Court has now spoken any extended discussion would be presumptuous. The distinction between regulation and revenue has given the courts some difficulty.[16]

of Claims of Government for Taxes Against the Estate of Bankrupt—Construction of Sections 64 and 64B of the Bankruptcy Act, 5 George Washington Law Review 257 (note); Creditors' Rights—Section 64 of The Bankruptcy Act—City's Right to Preference for Money Owed Under City Sales Tax By Insolvent Vendor, 36 Columbia Law Review 1356 (note).

[10] 11 U.S.C.A. § 35; 11 U.S.C.A. § 93, sub. j; 11 U.S.C.A. § 104, sub. a; cf. Kaw Boiler Works v. Schull, 8 Cir., 230 F. 587, L.R.A.1916E, 628; Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442.

[11] New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284; In re Otto F. Lange Co., D.C., 159 F. 586.

[12] Missouri v. Ross, 299 U.S. 72, 57 S. Ct. 60, 81 L.Ed. 46.

[13] Bankruptcy—Priority of Tax Claims —Social Security Contribution, 40 Columbia Law Review 1241, 1242 (note), above cited.

[14] The interrelation of the mechanism of the federal and state acts is set forth in Douglas, Social Security in the United States, 2d Ed. 1939; Compton, Social Security Payroll Taxes, 3 Law & Contemporary Problems (symposium) 1–334; Compulsory Unemployment Insurance Under the Social Security Act, 22 Washington University Law Quarterly 236 (note); Unemployment Insurance; Federal and State Legislation, 35 Columbia Law Review 1262 (note), and the conflicting theories which result in differences among state unemployment insurance plans are evaluated in Homan, An Economic Analysis of Unemployment Insurance, 30 Illinois Law Review 178.

[15] Rice, A Note On The Constitutionality of State Unemployment Compensation

Laws, 3 Law & Contemporary Problems 138; Constitutional Law—State Unemployment Insurance, 31 Illinois Law Review 386 (note); Constitutional Law—The Federal-State System of Unemployment Compensation Under the Social Security Act, 35 Michigan Law Review 1306, especially 1317–1319 (comment); Constitutional Law—Tenth Amendment As A Limitation On A Delegated Federal Power—Validity of Federal and State Taxes On The Employment Relationship Under Social Security Act, 37 Columbia Law Review 1208 (note); Lambert, Compulsory Unemployment Insurance and Due Process of Law, 7 Wisconsin Law Review 146; Constitutional Law—Police Power—Validity of Compensation Unemployment Insurance, 34 Michigan Law Review 1235 (note); Epstein and Cary, Constitutional Aspects of State Unemployment Insurance, 8 New York Bar Association Bulletin 215; Constitutional Law—Unemployment Insurance—New York Unemployment Insurance Law, 5 Fordham Law Review 499 (note); Constitutional Law—Police Power—Validation of the New York Unemployment Insurance Law, 11 St. Johns Law Review 110 (note); Constitutional Law—Due Process—Equal Protection—Power of State to Enact Unemployment Insurance Law, 21 Minnesota Law Review 97; Constitutional Law—North Carolina Unemployment Compensation, 15 North Carolina Law Review 407.

[16] Veazie Bank v. Fenno, 8 Wall. 533, 19 L.Ed. 482; McCray v. United States, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561; United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493; Child Labor Tax Case, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L. R. 1432; Hill v. Wallace, 259 U.S. 44,

They have felt obliged to deal with such depressing niceties as "functional separability" and "concomitant purpose".[17] Some writers predicted the conduct-coercing theory,[18] and others called attention to the 10% over the offset.[19] A writer in the Pennsylvania Law Review thirty years ago pointed out:

"* * * Any statute is to be classified as a taxing statute which directly requires the payment of money by a person as a contribution to a public benefit. Under such a classification, a statute which imputes liability to a person and thereby compels payment of money by him, either without reference to any wrongdoing on his part or by imputing wrongdoing where none in fact exists, is either void as a confiscation of property, or is an exercise of the power of taxation. If done without reference to any public benefit it is a confiscation; if done for the purpose of accomplishing a public benefit and if the public benefit is of sufficient consequence in proportion to the amount of money compelled to be paid, it is taxation." Snow, Social Insurance, 59 University of Pennsylvania Law Review 283, 286-287.

And more recently Professor Shulman of the Yale University School of Law said:

"* * * If the funds required under Title II were collected by means of some other general tax, a sales tax or the income tax, the charge could hardly be made. In a sense all taxes are exactions of money from one group for the benefit of another. No expenditure returns to the taxpayer direct benefits, or indirect benefits through the general welfare, exactly proportioned to his tax payments. Tax money expended for soldiers' bonuses, for relief of the unemployed and the needy, and for pensions to Presidents' widows and civil servants is in direct form money exacted from one group for the benefit of another. In substance the case is no less clear with respect to the protective tariff and the taxes paid by that class of the population who smoke tobacco and drink liquor. Yet that is hardly expropriation. The legislative determination that the taxes and expenditures are for the general welfare is a determination that they are for the benefit of the taxpayers as well as the direct recipients of the expenditures. There is, and can be, no requirement that taxes or expenditures benefit all taxpayers in precisely the same manner or in degrees exactly proportioned to their taxes. The charge of 'expropriation' raises no new issue even though it points to a psychological hazard." Shulman, The Case For The Constitutionality of The Social Security Act, 3 Law and Contemporary Problems 298, 309, 310.

▆▆ As is known, the Social Security Act, 42 U.S.C.A. § 301 et seq., and its unemployment compensation provisions reached the Supreme Court in 1936. The decision of the New York Court of Appeals[20] in favor of constitutionality was upheld by an equally divided court.[21] Later two cases from Alabama[22] were argued and resulted in a five to four declaration

---

42 S.Ct. 453, 66 L.Ed. 822; Constitutional Law—Taxation—Federal Tax on Resale of Theatre Tickets, 28 Columbia Law Review 500 (note); Hale, Force and the State: A Comparison of "Political" and "Economic" Compulsion, 35 Columbia Law Review 149.

[17] Constitutional Law—The Federal-State System of Unemployment Compensation Under the Social Security Act, 35 Michigan Law Review 1306 (Comment), above cited.

[18] Rice, A Note On The Constitutionality of State Unemployment Compensation Laws, 3 Law and Contemporary Problems 138. This article cites: Sayles v. Foley, 38 R.I. 484, 490, 96 A. 340, 343; Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 P. 398; Mountain Timber Co. v. Washington, 243 U.S. 219, 37 S. Ct. 260, 61 L.Ed. 685, Ann.Cas.1917D, 642; Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186, 55 L.Ed. 112, 32 L.R.A.,N.S., 1062, Ann.Cas.1912A, 487; Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 79 L. Ed. 1468. This last case is noted and discussed in Railroad Retirement Pension Act of 1934, 44 Yale Law Journal 292 (comment); Powell, Commerce, Pensions, and Codes, 49 Harvard Law Review 1.

[19] Douglas, Social Security in the United States, p. 274.

[20] W. H. H. Chamberlin, Inc., v. Andrews, Industrial Com'r, 271 N.Y. 1, 2 N.E.2d 22; noted in Constitutional Law—Unemployment Insurance—New York Unemployment Insurance Law, 5 Fordham Law Review 499.

[21] W. H. H. Chamberlin, Inc., v. Andrews, Industrial Com'r, 299 U.S. 515, 57 S.Ct. 122, 81 L.Ed. 380.

[22] Gulf States Paper Corp. v. Carmichael (Southern Coal & Coke Co. v. Carmichael), D.C., 17 F.Supp. 225;

of validity.[23] That declaration flowed from the adoption of the true tax theory. The Justice who wrote the majority opinion in the Carmichael case said:

" * * * While the particular name which a state court or legislature may give to a money payment commanded by its statute is not controlling here when its constitutionality is in question, cf. Educational Films Corp. v. Ward, 282 U.S. 379, 387, 51 S.Ct. 170, 171, 75 L.Ed. 400, 71 A.L.R. 1226; Storaasli v. Minnesota, 283 U.S. 57, 62, 51 S.Ct. 354, 355, 75 L.Ed. 839; Wagner v. Covington, 251 U.S. 95, 102, 104, 40 S.Ct. 93, 94, 64 L.Ed. 157, 168; Standard Oil Co. v. Graves, 249 U.S. 389, 394, 39 S.Ct. 320, 63 L.Ed. 662, we see no reason to doubt that the present statute is an exertion of the taxing power of the state. Cf. Carley & Hamilton v. Snook, 281 U.S. 66, 71, 50 S.Ct. 204, 206, 74 L.Ed. 704, 68 A.L.R. 194.

"Taxes, which are but the means of distributing the burden of the cost of government, are commonly levied on property or its use, but they may likewise be laid on the exercise of personal rights and privileges. As has been pointed out by the opinion in the Chas. C. Steward Machine Co. case [Chas. C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293], such levies, including taxes on the exercise of the right to employ or to be employed, were known in England and the Colonies before the adoption of the Constitution, and must be taken to be embraced within the wide range of choice of subjects of taxation, which was an attribute of the sovereign power of the states at the time of the adoption of the Constitution, and which was reserved to them by that instrument. As the present levy has all the indicia of a tax, and is of a type traditional in the history of Anglo-American legislation, it is within state taxing power, and it is immaterial whether it is called an excise or by another name." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 508, 509, 57 S.Ct. 868, 871, 81 L.Ed. 1245, 109 A.L.R. 1327.

Three years after these decisions, the issue of the character of the exaction came up in another form. The question was the familiar one of the "immunity of instrumentalities."[24] Before that question is even reached, a tax has to be found. Following its earlier ruling, the Supreme Court held the Arkansas Unemployment Compensation law to be a taxing act.[25] We have no doubt that they would equally so hold under the Bankruptcy Act.

The judgments of the District Court are reversed.

---

Chas. C. Steward Mach. Co. v. Davis, 5 Cir., 89 F.2d 207; cf. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516.

[23] Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; cf. Buckstaff Bath House Co. v. McKinley, 308 U.S. 358, 60 S.Ct. 279, 84 L.Ed. 322; W. H. H. Chamberlin, Inc., v. Andrews, 271 N.Y. 1, 2 N.E.2d 22, above cited; Gillum v. Johnson, 7 Cal.2d 744, 62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595; Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516,

above cited; Lally v. Texas, Tex.Civ. App., 138 S.W.2d 1111; Fidelity-Philadelphia Trust Co. v. Hines, 337 Pa. 48, 10 A.2d 553; Provident Mutual Life Ins. Co. of Philadelphia v. Unemployment Compensation Commission of New Jersey (Investors' Syndicate v. Unemployment Compensation Comm.), 126 N. J.L. 348, 19 A.2d 630, decided April 25, 1941.

[24] Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 487, 59 S.Ct. 595, 83 L. Ed. 927, 120 A.L.R. 1466.

[25] Buckstaff Bath House Co. v. McKinley, 308 U.S. 358, 60 S.Ct. 279, 84 L.Ed. 322.