

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

*Overrules O-1251
where conflicts*

March 10, 1954

Hon. Tom Moore, Jr.
District Attorney
McLennan County
Waco, Texas

Dear Sir:

·Opinion No. S-124

Re: Ad valorem taxation of
military housing units
constructed and main-
tained on James Conally
Air Force Base by pri-
vate corporation.

In your letter you request the opinion of this office
as to State and local ad valorem taxation of a military housing
project constructed on James Connally Air Force Base in accord-
ance with the provisions of the Act of August 5, 1947 (10 U.S.C.
1270) and Title VIII of National Housing Act as amended (12 U.S.
C. 1748-1748h), by the Cavu Village Homes, Inc., a private corpo-
ration, the lessee.

We have a photostatic copy of the lease executed by
the Government and the lessee.

The lease provides that the Government will lease
the described land for 75 years to the lessee to be used for erect-
ing, maintaining and operating the housing project. Lessee is to
pay the Government an annual rental of $100.00. Provision is
made for obtaining mortgage insurance under Title VIII of the
National Housing Act. The lessee is required to lease all units
of the housing project to such military and civilian personnel of
the Army, Navy, Marine Corps or Air Force (including Govern-
ment contractors' employees) assigned to duty at the military in-
stallation or in the area where the installation is located as are
designated by the Commanding Officer. In the event the Command-
ing Officer fails to designate such personnel within a stated period,
and upon other stated conditions, the lessee may lease the units to
persons other than said military or civilian personnel. Detailed
provisions cover leasing agreements made by the lessee.

The eighth covenant and condition of the lease contract
reads, in part, as follows:

"8. That the Lessee shall pay to the proper
authority, when and as the same become due and pay-
able, all taxes, assessments, and similar charges

> which, at any time during the term of this Lease,
> may be taxed, assessed or imposed upon the Gov-
> ernment or upon the Lessee with respect to or up-
> on the leased property. In the event any taxes, as-
> sessments or similar charges are imposed with
> the consent of the Congress of the United States up-
> on the property owned by the Government and inclu-
> ded in this Lease (as opposed to the leasehold inter-
> est of the Lessee therein), this Lease shall be rene-
> gotiated so as to accomplish an equitable reduction
> in the rental provided above, which shall not be great-
> er than the difference between the amount of such
> taxes, assessments or similar charges which were
> imposed upon such Lessee with respect to his lease-
> hold interest in the leased property prior to the
> granting of such consent by the Congress of the
> United States. . . ."

At the expiration of the lease all improvements made upon the premises and all items required to be furnished by the lessee are to remain on the leased premises and be the property of the Government without compensation.

Use and occupancy of the leased premises are subject to such rules and regulations as the Commanding Officer shall prescribe for military and security purposes. After there is no Federal Housing Insured Mortgage on the property and the leased premises are no longer under the control of the Federal Housing Commissioner, the lessee and the Commanding Officer are to agree on maintenance and repair standards.

The Government has the right after the expiration of fifty years and six months to terminate the lease provided the interest of the Federal Housing Administration in the lease and in any mortgage on the leasehold interest has been fully terminated. After there is no mortgage held or insured by the Federal Housing Administration on the leasehold estate, and the leased premises are no longer under the control of the Commissioner, all disputes concerning establishment of rental rates shall be decided by specified parties.

If other provisions and conditions stated in the lease are material to a determination of your question, we shall take note of the same in the course of our opinion.

This office has heretofore rendered an opinion upon this question on substantially the same facts. (Op. No. V-1251.) We have for the purpose of this opinion adopted the statement of facts as stated

above upon which Opinion No. V-1251 was predicated. We have made only such changes as necessary to conform to names, dates, etc., as we are not able to improve on this statement of the pertinent facts.

Opinion No. V-1251 is overruled only insofar as it may be in conflict with this opinion which is confined to the facts presented in this request.

We do not think a deed of cession by the Governor pursuant to the authority granted by Article 5247, Vernon's Civil Statutes, when construed in connection with other pertinent statutory provisions, both federal and state, serves to render federal immunity from taxation so static and unyielding as to foreclose ad valorem taxation by the State and its taxing political subdivisions upon all property located upon the ceded premises. This was not the intention of the Legislature or of Congress. The contracting parties here are the United States acting by its duly authorized representative as lessor and a private corporation incorporated under the laws of this State, Cavu Village Homes, Inc. as lessee. The contracting parties contemplated the imposition of taxes by the State and its political subdivisions notwithstanding the deed of cession by the Governor, or at least the possibility of such taxation. This is manifest by paragraph 8 of the lease quoted above. We do not think it can be seriously contended that the Cavu Village Homes, Inc., the lessee, is owned and controlled by the Federal Government, or is in any sense a "Federal instrumentality," and for that reason enjoys federal immunity from taxation. What is said by the Supreme Court of Florida in the case of Gay v. Jemison, 52 So.2d 137 (1951), in passing upon the application of certain taxes imposed under Florida law upon a similar housing project erected upon a military reservation in that State is likewise applicable here. In that case the Court said:

"Comparing the probable useful life of the buildings with the time for which the lease is to extend, the question immediately arises in one's mind whether the useful life of the buildings will not have ended by the time the lease expires. We have already said also that the buildings are for the 'primary' use of military personnel. It may be assumed that this is the chief purpose of the installation; however, the lease contains the statement that the property may be occupied by civilian as well as military personnel of the army, marine corps, and air force; and, further, that upon failure of the commanding officer of the field to designate persons of those classifications to tenant any units within a certain length of time after they become vacant, the lessee may then rent to parties who

do not fall in any of these categories.

"It is an obligation of the lessee to comply with all ordinances with reference to licenses and permits to do business and it is its privilege to engage public utility companies to provide water, fuel, telephone service, and electric power for the use of the occupants of the units. The lessee is bound to maintain the property in a state of good repair and to save the government harmless against all actions and suits springing from any failure in this respect.

"The lessee is required at its own cost to insure the buildings and to restore any of them damaged by fire, but if a building is wholly destroyed, then the lessee has the right to determine that the building shall not be reproduced.

"The lessee must pay 'all taxes, assessments, and similar charges which, at any time during the term of (the) lease, may be taxed, assessed or imposed upon the Government or upon the Lessee with respect to or upon the leased premises.'

"The bare title of the property, of course, remains in the United States government, and for its use the government receives but $100 a year.

"Bearing in mind what we consider the evident intent of the Congress of the United States, and construing the language of the contract between the Government of the United States and the lessee, we cannot arrive at the chancellor's conclusion that this housing project when completed will be a public work owned by the United States Government.

"It is true that the government, through its military, retains a certain supervision over the area where the project is located and has a preference with reference to accommodations for its personnel, but taken as a whole, the arrangement is in reality one affording a source of income to the lessee, and we think it is obvious that any money withheld from the state by applying the exemption would not benefit the national exchequer but would reach the pockets of private citizens. The corporation borrows the money, takes the

risks, bears the cost of maintenance and insurance,
receives the income from rentals, and in case of
total destruction of a building by fire, keeps, if it
chooses, the money paid by the insurance company
to cover the loss. The corporation must pay the
debt it incurs to finance the installation, and cer-
tainly any profit for a period of seventy-five years
belongs to it. Meanwhile as a part of its expenses
there is the nominal payment of $100 a year to the
government as lessor.

"We believe the Comptroller's position is cor-
rect and that the materials furnished by the contrac-
tor will not become a part of a government work but
of buildings of a private enterprise, and therefore
are subject to state tax. . . ."

The immunity of the Federal Government from State
taxation of its property and instrumentalities must be given a
practical application to attain its purpose, but without unnecessary
interference of the right of taxation. Federal immunity from taxa-
tion is personal to the Government and may not be transferred to
or be used for the protection of citizens or private corporations.
In other words, as applied to the problem here, the Federal Govern-
ment may not confer its immunity upon the Cavu Village Homes, Inc.,
a private corporation. Ken Realty Co., Inc. v. Johnson Tax Assessor
of Jefferson County, Ala., 138 F.2d 809 (1944). The mere fact that a
private corporation conducts its business under a contract with the
United States does not make it "an instrumentality of the United States"
immune from State taxes. Buckstaff Bath House Co. v. McKinley, 60
S.Ct. 279, 308 U.S. 358, 84 L.Ed. 322 (1939).

Article 5247, which authorizes the deed of cession by the
Governor, and Article 5248, which accords a conditional exemption
from taxation of land ceded, are part of the same Title 85 of the Re-
vised Civil Statutes and should be construed together. They should
not be construed in such a manner as to defeat the legislative intent
or the intention of Congress embraced in the Federal Housing Act.
We think it quite manifest that a private corporation, such as Cavu
Village Homes, Inc., under the facts here presented is subject to ad
valorem taxation under the laws of this State upon the leasehold in-
terest of such private corporation. Article 5248, as amended by
chapter 37, Acts of the 51st Legislature, First Called Session, 1950,
page 105, now reads as follows:

"The United States shall be secure in their pos-
session and enjoyment of all lands acquired under the

> provisions of this title; and such lands and all improvements thereon shall be exempt from any taxation under the authority of this State so long as the same are held, owned, used and occupied by the United States for the purposes expressed in this title and not otherwise; provided, however, that any personal property located on said lands which is privately owned by any person, firm, association of persons or corporation shall be subject to taxation by this State and its political subdivisions; and provided, further, that any portion of said lands and improvements which is used and occupied by any person, firm, association of persons or corporation in its private capacity, or which is being used or occupied in the conduct of any private business or enterprise, shall be subject to taxation by this State and its political subdivisions."

The Governor's deed of cession must be construed within the limits of this statutory provision, and the terms of the statute will be read into the deed of cession. When this is done, the leasehold interest which is privately owned must be rendered for taxation by the State and its political subdivisions.

As to contracts with respect to performance of certain acts prescribed by statute, it is the well settled rule in Texas that the contract and statute will be construed together. Empire Gas & Fuel Co. v. State, 121 Tex. 238, 47 S.W.2d 265. The statute becomes a part of the contract whether specifically incorporated therein or not. Pearson Lumber Co. v. Cooper, 54 S.W.2d 231 (Tex.Civ.App., 1932, error ref.). It is therefore quite apparent that the deed of cession by the Governor when construed in connection with the provisions of Article 5248, supra, the lease contract, and the acts of Congress does not have the effect of ceding unconditionally the State's taxing power. It will not be presumed that the Legislature intended for the Governor to relinquish any more of the State's sovereign power of taxation than necessary. Moreover, it is clear that Congress intended this property held by the corporation under its lease from the Federal Government to be subject to State ad valorem taxes. In the Federal Housing Act it is specifically so provided.

An examination of the lease in question from the Secretary of the Air Force to Cavu Village Homes, Inc., of date March 22, 1952, discloses:

(a) The lease was executed under authority of the Act of August 5, 1947 (10 U.S.C. 1270), and Title VIII of the National

Housing Act as amended (12 U.S.C. 1748-1748h).

(b) Paragraph eight of the lease expressly provides 'that the Lessee shall pay to the proper authorities when and as the same become due and payable, all taxes, assessments, and similar charges, which, at any time during the term of this lease, may be taxed, assessed or imposed on the Government or upon the Lessee with respect to or upon the leased premises."

It is obvious from these provisions that the United States has required the Lessee to pay the taxes in question. Section 1270-D, 10 U.S.C., under authority of which the lease in question was entered into and executed, provides, "the Lessee's interest, made or created pursuant to the provisions of Sections 1270-1270-D of this Title, shall be made subject to State or local taxation."

Section 1748f, 12 U.S.C., also, pursuant to and under authority of which the lease in question was entered into by Lessee, provides "nothing in this subchapter shall be construed to exempt any real property acquired and held by the Commissioner under this Title from taxation by any State or political subdivision thereof to the same extent, according to its value as other real property is taxed." This provision is likewise a part of the lease in question under the authorities cited.

This is made clear in the case of Meade Heights, Inc. v. State Tax Commissioner, 95 A.2d 280 (Md.Ct.App.1953), in which the court was considering a lease similar in many respects to the lease here involved. In this case the court said:

'The lease between the Secretary of the Army, representing the Federal Government, and Meade Heights, Inc. provided for the lease of 28-1/2 acres of land in Fort Meade, to be used for the erection of 348 housing units by the lessee, according to approved plans. It was made under the authority of Public Law 364, 80th Congress, passed in 1947 and codified as Title 10 U.S.C.A. §1270, which authorized the Secretary of the Army 'to lease such real or personal property under the control of his Department . . . to such lessee or lessees and upon such terms and conditions as in his judgment will promote the national defense or will be in the public interest.' Sec. 1270d provides that the 'lessee's interest, made or created pursuant to the provisions of sections 1270-1270d of this title, shall be made subject to State or local taxation.' Title 12 U.S.C.A. §1748 et seq. passed two years later,

> established a system of mortgage insurance to en-
> courage private interests to build and operate hous-
> ing projects on military reservations. To be elig-
> ible the mortgagor had to be approved and to agree
> to restrictions as to sub-rents and tenants who were
> to be primarily military personnel."

It is quite apparent, it seems to us, that the Federal Government as lessor approved the lessee's leasehold interest subject to ad valorem taxes imposed under our law, otherwise there would have been little reason to insert paragraph 8 in the lease which made the lessee liable for all taxes that might be imposed under our state law. There is little, if any, difference in the problem that was before the court in the case of Meade Heights, Inc. v. State Tax Commissioner, supra, and the problem before us. The Maryland law, as does ours, provides for taxation of leasehold estates. Our law has a qualification that the lease must extend for three years or more and the lease here in question extends quite beyond the useful life of the buildings constructed by the lessee. Out statute which provides for the taxation of leasehold interests is Article 7173, V.C.S., and Article 7174, V.C.S., provides the method of ascertaining the value. It is expressed in this language: "taxable leasehold estates shall be valued at such price as they would bring at a fair voluntary sale for cash." We quote further from the case of Meade Heights, Inc. v. State Tax Commissioner, supra, which we think is appropriate here:

> "Coming to the main point, it is perfectly
> clear that, in the absence of congressional consent,
> express or implied, a State cannot impose a direct
> tax upon property owned by the Federal Government
> or held for it. John Hopkins Univ. v. Board of Coun-
> ty Com'rs., 185 Md. 614, 45 A.2d 747; United States
> v. Co. of Allegheny County, Pa., 322 U.S. 174, 64 S.
> Ct. 908, 88 L.Ed. 1209. But it is equally clear that
> private interests in government property are taxable
> to their full value. Baltimore Dry Dock Co. v. Balti-
> more City, supra; S.R.A., Inc. v. State of Minnesota,
> 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 322; New Bruns-
> wick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72
> L.Ed. 693. In the instant case, Congress has definite-
> ly consented to the taxation of the lessee's interest.
> whatever that may be. It can only complain if, in fact,
> its reserved interest is subject to taxation."

See, also, the case of Byram Holding Company v. Bogren, 63 A.2d 822 (N. J. S.Ct., 1949), which holds that the Federal Government by

its lawmaking power may waive wholly or with such limitations as it may deem proper, its immunity from State taxation.

In other words, where Congress waives the tax immunity of the Federal Government and agrees that such property may be subject to taxation by the State in which it is located, such taxes may be imposed. Such is the situation we have here, but with a more cogent reason as to why the leasehold interest held by the private corporation under its lease from the Federal Government should be subject to ad valorem taxation under the laws of this State. The Federal Government has consented to the imposition of State taxation by the express covenant of the lease contained in paragraph 8 quoted above, and Congress has in the Federal Housing Act expressly authorized ad valorem taxation upon the leasehold estate under the laws of our State.

We therefore hold that the leasehold interest of the Cavu Village Homes, Inc., is subject to ad valorem taxation under the laws of this State. (Emphasis throughout supplied by the writer.)

## SUMMARY

The leasehold interest of a private corporation which erected a housing project on a military reservation, over which the State ceded jurisdiction to the Federal Government after March 17, 1950, pursuant to the authority of the Act of August 5, 1947 (U.S.C. 1270), and Title VIII of the National Housing Act as amended (12 U.S.C. 1748-1748h), is subject to State ad valorem taxes.

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

APPROVED:

W. V. Geppert
Taxation Division

John Atchison
Reviewer

By L. P. Lollar
Assistant

Mary K. Wall
Reviewer

Robert S. Trotti
First Assistant

LPL:mg