ARNOLD COLLEGE FOR HYGIENE AND PHYSICAL EDUCA-
TION *v.* CORNELIUS J. DANAHER, ADMINISTRATOR.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 11, 1944—decided January 11, 1945.

504

*Thomas R. Robinson,* with whom, on the brief, was *Vincent J. Fasano,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

MALTBIE, C. J.   This is an appeal from a determination by the commissioner of labor and factory inspection acting as administrator under the Unemployment Compensation Act that the plaintiff is required to make contributions under the act for the years 1941-1943.   The trial court sustained the administrator and the plaintiff has appealed to this court.   The plaintiff's contention is that it is exempt from making contributions because it is "a corporation . . . organized and operated exclusively for . . . educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual."   General Statutes, Cum. Sup. 1939, § 1335e.

The plaintiff is a corporation without capital stock, organized under a special law passed in 1929.   20 Spec. Laws 1138.   The sole purpose stated in its charter is to "conduct an institution for the higher education of men and women and more particularly in hygiene and physical education and for the training of teachers of physical education."   It is managed by a board of trustees which, originally appointed by the incorporators, has since been self-perpetuating.   It has at times operated at a loss and at other times at a profit, and while the profit has in some measure offset the

loss, the profit and loss account has at all times shown a deficit. During the period for which contributions are claimed it operated at a loss. The trustees have never received any compensation, no part of the net earnings has ever been distributed to private individuals, and no person has received anything of value from the corporation except reasonable compensation for services rendered. There is, however, nothing in the charter to prevent the corporation from distributing earnings, if there are any, to its members. In 1937 the plaintiff claimed to be exempt from the unemployment compensation tax, but the administrator denied the claim on the ground that the charter did not contain any provision forbidding the distribution of earnings to its members. The plaintiff thereafter paid contributions. It secured the passage by the legislature of an amendment to its charter which would obviate the grounds of the administrator's decision. 23 Spec. Laws 1011. It neglected, however, within six months thereafter to accept the amendment at a meeting properly warned and held for that purpose and did not file a copy of a vote of acceptance in the office of the secretary of the state, as required by § 3370 of the General Statutes. Upon being notified of the passage of the amendment, the administrator ruled that the plaintiff was exempt from the provisions of the act after June 30, 1941; but, upon learning of its failure to comply with § 3370, he demanded contributions relating back to that date.

Previous to an amendment made in 1925 to our statutes imposing property taxes, they had exempted "buildings or portions of buildings exclusively occupied as colleges, academies, churches, public school houses or infirmaries, with the land appurtenant to such infirmaries." General Statutes, Rev. 1918, § 1160. In applying this provision we held that an

educational institution, to come within the exemption, must be "wholly sequestered from private use" and that it was not so sequestered if it were possible under its charter that individuals might gain a private benefit from its operation beyond reasonable compensation for services rendered. *Brunswick School* v. *Greenwich*, 88 Conn. 241, 246, 90 Atl. 801; *Pomfret School* v. *Pomfret*, 105 Conn. 456, 461, 136 Atl. 88. In 1927 the act was amended expressly to include as a requirement for exemption of such an institution that "any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of [its] purposes or as proper beneficiary of its strictly charitable purposes." Public Acts, 1927, Chap. 319, § 1 (7)(a); General Statutes, § 1163 (7) (a). In the light of the history of the exemption of such institutions, we held in *Canterbury School, Inc.* v. *New Milford*, 111 Conn. 203, 207, 149 Atl. 685, that the statute did not make the test of the exemption that no individual had received or was receiving a pecuniary profit except as permitted in the statute, but that the organization was constituted in such a way that no such profit could be received. See *Blodgett* v. *Bridgeport City Trust Co.*, 115 Conn. 127, 134, 161 Atl. 83; *Edgewood School, Inc.* v. *Greenwich*, 131 Conn. 179, 38 Atl. (2d) 792. The administrator, in denying exemption to the plaintiff, applied a like limitation to the terms of exemption of educational institutions in the unemployment compensation law, and the trial court took the same view.

The federal Social Security Act, for the purposes of establishing unemployment compensation, imposed a tax upon employers based upon the amount of wages paid, and it provided that, if any state enacted a law

providing for such compensation which would meet certain tests laid down in the federal act and which was approved by the federal social security board, any employer could deduct from the federal tax 90 per cent of the amount paid under the state law. 49 Stat. at Large, p. 639, Title 9, 42 U. S. C. § 1101 et seq. The federal act provided for grants to the states; 49 Stat. at Large, p. 626, Title 3, 42 U. S. C. § 501 et seq.; but the actual payment of compensation is the function of the states which adopt unemployment compensation acts. The administration of the branch of federal security which deals with this matter and the administration of the state laws constitute a single system. Unless the provisions of the state statute clearly differ from those of the federal act, it must be assumed that the legislature intended that they be interpreted alike, and this is particularly true with reference to those which determine the persons who are obligated to make contributions. See *Northwestern Mutual Life Ins. Co.* v. *Tone*, 125 Conn. 183, 188, 4 Atl. (2d) 640; *H. Duys & Co., Inc.* v. *Tone*, 125 Conn. 300, 307, 5 Atl. (2d) 23. Indeed, while a more inclusive interpretation of a state act might not be in itself particularly unfortunate, a construction which would exempt an employer subject to taxation under the federal act from making contributions under the state act would produce the strange result that he would have to pay the full tax to the federal government imposed on him, but his employees would not be entitled to compensation, because, under our act, only the employees of an employer who makes contributions under it can receive compensation. *Waterbury Savings Bank* v. *Danaher*, 128 Conn. 78, 82, 20 Atl. (2d) 455.

The words in the statute under which the plaintiff claims to be exempt are taken literally from the federal Social Security Act; in that act they occur twice

in provisions relating to unemployment compensation and also with reference to old age benefits. 49 Stat. at Large, p. 639 § 811, p. 643 § 907, p. 625 § 210, 42 U. S. C. §§ 1011, 1107, 409. The Security Act took them from the federal income tax law, in which they have long had a place, both as regards deductions of contributions made by taxpayers to certain organizations and exemptions of certain corporations from the payment of any tax. See 43 Stat. at Large, pp. 271, 282, 26 U. S. C. §§ 23(o), 103(6) (1934); 52 Stat. at Large, pp. 463, 481, 26 U. S. C. §§ 23(o), 101(6). There can be no reasonable doubt that the Congress, in using the same language in the two laws, intended to express the same thought, and we have sought for cases in which the words have been applied as regards claims of exemption under each.

An examination of the decisions in the federal courts points clearly to the conclusion that the test of exemption is found in the actual purposes which an organization serves and for which its funds are used rather than in the possibility that, as organized, it might pursue objects or use its funds for purposes beyond the scope of the exemption. Thus in *Kansas City Hay Dealers' Assn.* v. *Crooks*, 28 Fed. (2d) 909, the District Court held the plaintiff exempt under the income tax law and in doing so said (p. 910): "Do the net earnings of this association inure to the benefit of private individuals, within the meaning of section 231? I think not. The earnings arising from the business enterprises in which it is incidentally engaged, and which earnings are relatively small, are used and intended to be used, not to produce either immediate or future profits for the members of the association, but to carry on its general purposes and objects. Conceivably, on the final dissolution of the association, there might be a division of any surplus

then existing among its members, and in that way its earnings might inure to the benefit of individuals. If the association were organized for profit, that ultimate possible division of a surplus might be sufficient to justify the exclusion of the association from the exempted class. Such a remote contingency, however, in my judgment, with an association not organized for profit, was not intended to destroy the privilege of exemption." This decision was affirmed by the Circuit Court of Appeals, sub nom. *Crooks* v. *Kansas City Hay Dealers' Assn.*, 37 Fed. (2d) 83, and the excerpt we have taken from the opinion of the lower court was quoted in part (p. 87). In *Faulkner* v. *Commissioner of Internal Revenue*, 112 Fed. (2d) 987, 990, a contribution to a birth control league was held deductible in determining income subject to taxation; the constitution of the league at the time specified as one of its objects a purpose which was beyond the scope of the exemption, but the league had decided to abandon that object although its constitution had not in fact been amended in this respect. In *Commissioner of Internal Revenue* v. *Battle Creek*, 126 Fed. (2d) 405, 406, the Circuit Court of Appeals, in holding a corporation which operated a sanitarium exempt under the income tax law as a charitable organization, although its charter authorized it to conduct other businesses in addition to that of a sanitarium, said: "It is not unusual for charters of corporations to grant broad powers and privileges that are never intended to be used. That does not control the specific purposes of the incorporation." In *United States* v. *Proprietors of Social Law Library*, 102 Fed. (2d) 481, in holding the defendant exempt under the income tax law as an educational institution, the court based its decision in part upon a stipulation reading as follows (p. 484): "It is stipulated that no part of the earnings of the

corporation is paid to or distributed to any shareholder of the corporation by reason of his ownership of shares in the corporation. . . ." See also *Trinidad* v. *Sagrada Orden*, 263 U. S. 578, 44 Sup. Ct. 204; *Commissioner of Internal Revenue* v. *Chicago Graphic Arts Federation*, 128 Fed. (2d) 424, 426.

If we turn to decisions under the Social Security Act, we find that they point to a similar conclusion. Thus in *Southeastern Fair Assn.* v. *United States*, 52 Fed. Sup. 219, the Court of Claims held the plaintiff exempt from the tax as an educational institution, although these facts appeared of record (p. 221): "Plaintiff issued and has outstanding 10 shares of common stock of the par value of $100, and preferred stock in the amount of $69,000. The common stock, which is the voting stock, is held exclusively by the Atlanta Chamber of Commerce. The preferred stock has been subscribed by individuals and business firms in Atlanta. No dividends have ever been declared or paid on either common or preferred stock except one liquidating dividend, which was used to retire a portion of the preferred stock." See also *Jones* v. *Better Business Bureau*, 123 Fed. (2d) 767; *Oklahoma State Fair & Exposition* v. *Jones*, 44 Fed. Sup. 630; *City Club of Milwaukee* v. *United States*, 46 Fed. Sup. 673.

There can be no question that the plaintiff was organized exclusively for an educational purpose. No shareholder or individual has ever received any benefit from its operations except reasonable compensation for services rendered. There is no finding that there is or ever has been an intent that any pecuniary profit should accrue to any individual, and in fact the presence of such an intent is thoroughly disproved by efforts of the plaintiff to amend its charter so that this could never happen. If we follow the decisions we have cited, we are satisfied that the mere fact

that under its charter its members might possibly secure some benefit at least through distribution of its property on its dissolution does not take it out of the exemption under our Unemployment Compensation Act. We find no sufficient warrant for reading into the provisions of this act the further requirement that, to secure an exemption, an organization must be so constituted that no member or other individual can legally derive a benefit from it beyond reasonable compensation for services rendered.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiff.

In this opinion BROWN and ELLS, Js., concurred.

DICKENSON, J. (dissenting). The majority opinion lays stress on the proposition that the mere fact that under the plaintiff's charter its members might possibly secure some benefit through distribution of its property is not sufficient to take it out of the exemption clause in the act. While this was one of the grounds upon which the trial court based its decision, it was not the main ground. The main ground was that under the special act creating it the plaintiff's earnings inured to the benefit of its members as a matter of law, there being no provision that these should be otherwise disposed of. This conclusion seems inescapable and to leave no room for the determination of the existence of an intent otherwise to dispose of possible net earnings from the conduct of the plaintiff corporation. The plaintiff apparently realized this and attempted to cure it by amendment to the act creating it. It secured such an amendment but failed to accept it in accordance with the provisions of General Statutes, § 3370. Its claim that ac-

ceptance was not essential to the amendment's validity under General Statutes, § 3371, is not tenable. The latter section was not applicable in the absence of a provision in the amendment itself expressly stating that consent was not necessary.

It is a matter of common knowledge that there are numerous private institutions organized for educational purposes but conducted for profit. Under the ruling in the majority opinion, no assessment for unemployment contribution may be made against these unless it is found as a matter of fact that they have acquired a net income and have distributed this to individuals. The difficulties of the defendant administrator in applying such a rule are obvious. His assessments are based upon wages, not on income, are payable quarterly and are required to be made within twenty-eight days after the end of the period of employment in question. Cum. Sup. 1939, § 1336e. This emphasizes the importance of the provision in § 1335e that a corporation to be exempt must be organized exclusively as well as operated exclusively for educational purposes.

An examination of the federal authorities leads to no contrary conclusion. In *Trinidad* v. *Sagrada Orden,* 263 U.S. 578, 44 Sup. Ct. 204, the basic case on the subject, the members of the corporation had no right to its property, even in case of dissolution, and it was said that the primary test of exemption was the destination rather than the source of income. In *Northwestern Municipal Assn.* v. *United States,* 99 Fed. (2d) 460, 461, it was said that the corporation must not be organized for profit under the first restriction of the act and, if profit occurs as an incident, this may not inure to the benefit of any private shareholder or individual. See *Commissioner of Internal*

*Revenue* v. *Chicago Graphic Arts Federation,* 128 Fed. (2d) 424, 427.

If the federal rule be, as the opinion states, that the test of exemption is found in the actual purposes which an organization serves and for which its funds are used, the instant case does not come within the factual situation contemplated in the cases cited in its support. There the profits had accrued and were used for purposes other than private enrichment. Here there have been no net earnings and hence no appropriation of them to exclusively educational purposes from which intent may be determined.

I think there was no error.

In this opinion JENNINGS, J., concurred.