Fuld, J. (dissenting).
This is a curious case; a taxpayer, the Communist Party, resists exemption from taxes, while the State, through its Industrial Commissioner, insists on thrusting such an exemption upon it.
The unemployment insurance system, a joint federal-state undertaking, provides benefits for persons involuntarily unemployed to be financed by an excise tax on employers (see U. S. Code, tit. 26, § 3301 et seq.; Labor Law, art. 18). Having lost his job with the Parkside Delicatessen, following earlier employment with the Communist Party, U. S. A., the respondent Albertson applied for such benefits under this State’s Unemployment Insurance Law (Labor Law, art. 18).[1] Although the *86 Party had paid to the State all unemployment insurance contributions required to be paid and had for many years made, and is currently making, tax payments to the United States Bureau of Internal Revenue under the Federal Unemployment Tax Act, the Industrial Commissioner decided that it was not subject to the tax and that, on this account alone, Albertson was not entitled to unemployment benefits.
This result is sought to be supported by reference to the Federal Communist Control Act of 1954 and by contentions about the nature of the Communist Party and the constitutional powers of the Federal and State Governments to deal with it. But, under settled and salutary principles of adjudication, courts avoid decision on such large-matters — here, not free of difficulty (see Auerbach, The Communist Control Act of 1954, 23 U. of Chi. L. Rev. 173, 183 et seq,; see, also, Remarks of Representative E. Celler, during House debate, 100 Cong. Rec. 14643)—unless they are necessary for a disposition of the issues presented. There is no such necessity in this case; decision of the issues now before us depends solely on the answer to one simple question of statutory construction. Is the Communist Party an “ employer ” subject to unemployment insurance taxes 1 If it is, the Appellate Division was correct, and its order reversing the Industrial Commissioner’s determination must be affirmed.
The New York Unemployment Insurance Law, having its origin in the Federal Social Security Act of 1935 (U. S. Code, tit. 42, § 301 et seq.), defines an “ employer”, in exceedingly broad terms, as “any person, partnership, firm, association, public or private ” (Labor Law, § 512). Absent an overriding-legislative proscription, it is admitted, the Communist Party is an employer within the meaning of our statute, and is liable to pay taxes under the provisions of section 560. But, says the Industrial Commissioner, since 1954, the Federal Government, by enactment of the Communist Control Act (U, S. Code, tit. 50, § 841 et seq.), has prevented the Communist Party from being an employer with the consequence that it is not subject to unemployment insurance taxes and its employees are not entitled to any benefits under our Unemployment Insurance Law.
This contention is unreasonable. In the first place, it is significant that the federal authorities, admittedly aware of the *87 Industrial Commissioner’s position, have taken one diametrically opposed and continue to recognize the Communist Party as an employer subject to the Federal act. And, although determination of the persons who fall within the class of employers subject to the state tax may not be a matter of federal law, there can be no doubt of the desirability, indeed, of the “ obvious necessity of harmonizing where possible our state [unemployment insurance] law with the federal acts ’ ’. (Pioneer Potato Co. v. Division of Employment Security, 17 N. J. 543, 549, per Brennan, J.) In the second place, the Communist Control Act, relied upon by the Commissioner, may not, in any event, be read to support the determination which he made in this case.
That the Unemployment Insurance Law of New York, as well as of the other states, and the Federal Unemployment Tax Act (U. S. Code, tit. 26, §§ 3301-3308) make up a “coordinated scheme” (Buckstaff Co. v. McKinley, 308 U. S. 358, 364) is obvious from the merest perusal of the statutes concerned (see, especially, U. S. Code, tit. 26, §§ 3302, 3306; U. S. Code, tit. 42, § 503; Labor Law, §-§ 530, 532, 536, 560, subd. 1, par. [c][2] ) and has been the subject of judicial observation not only in this court, but in numerous other courts. (See, e.g., Matter of Lazarus [Corsi], 294 N. Y. 613, 618; Buckstaff Co. v. McKinley, 308 U. S. 358, 363-364, supra; Lines v. State of California, 242 F. 2d 201, 203, cert, denied 355 U. S. 857; Scripps Mem. Hosp. v. California Employment Comm., 24 Cal. 2d 669, 677; Arnold Coll. v. Danaher, 131 Conn. 503, 507; Stromberg Hatchery v. Iowa Employment Security Comm., 239 Iowa 1047, 1051; Pioneer Potato Co. v. Division of Employment Security, 17 N. J. 543, 547, supra.) Thus, we are told on the highest authority that “ it would seem to be a fair presumption that the purpose of Congress was to have the state law as closely coterminous as possible with its own. To the extent that it was not, the hopes for a coordinated and integrated dual system would not materialize.” (Buckstaff Co. v. McKinley, 308 U. S. 358, 364, supra.) Perhaps, the strongest indication that “ The administration of the branch of federal security which deals with [unemployment compensation] and the administration of the *88 state laws [dealing with ,the same subject] constitute a single system” (Arnold Coll. v. Danaher, 131 Conn. 503, 507, supra,), is provided by the fact that our Legislature itself prescribed, as one of the conditions of liability for contributions under our law, that an employer is ‘" liable for tax under the provisions of the federal unemployment tax act ” (Labor Law, § 560, subd. 1, par. [c]).[3]
Notwithstanding these overwhelming indications that the state and federal unemployment compensation provisions should be administered, insofar as possible, as one act, the Industrial Commissioner has refused so to consider them. He admits that the federal authorities, despite the statutes on which he relies and despite their awareness of his position, continue to deal with the employer respondents herein as " liable for tax under the provisions of the federal unemployment tax ”, but he insists that his judgment should not be controlled by their determination. There is no warrant for this position in the statute which he administers. The necessity to achieve a coordinated and integrated dual system ” (Buckstaff Co. v. McKinley, 308 U. S. 358, 364, supra) represents so strong a state and federal legislative policy that the Industrial Commissioner should have concluded that, as long as an employer is treated by the federal authorities as subject to the federal unemployment tax, it is liable for contributions under our Unemployment Insurance Law, unless, of course, our own statute embodies an express provision to the contrary. (See Matter of Lazarus [Corsi], 294 N. Y. 613, 618, supra; see, also, cases cited, supra, p. 87; cf. Matter of Marx v. Bragalini, 6 N Y 2d 322, 333; Matter of Weiden, 263 N. Y. 107, 110.) As was said by the Connecticut Supreme Court, " Unless the provisions of the state [unemployment insurance] statute clearly differ from those of the federal act, it must be assumed that the legislature intended that they be interpreted alike, and this is particularly true with reference to those which determine the persons who are obligated to make contributions.” (Arnold Coll. v. Danaher, 131 Conn. 503, 507, supra.) Especially is this so where the only *89 basis for the Commissioner’s position is his interpretation of a federal statute.
In short, a determination by the federal authorities that, despite the Federal Communist Control Act, the Communist Party is an employer subject to registration and tax under the Federal Unemployment Tax Act (U. S. Code, tit. 26, § 3301 el seq.) requires a like decision by the Industrial Commissioner. Even were this not so, however, I would, nevertheless, regard the Commissioner’s ruling as unreasonable since it rests on a mistaken reading of the Communist Control Act. Insofar as relevant that statute (U. S. Code, tit. 50) recites in section 842:
“ The Communist Party of the United States * * * [is] not entitled to any of the rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the laws of the United States or any political subdivision thereof; and whatever rights, privileges, and immunities which have heretofore been granted to said party * * * are hereby terminated ”.
Whatever else this legislation may mean, it may not be taken to affect the “liability [of] any employer * * * for contributions ” under our Unemployment Insurance Law (Labor Law (art. 18, § 560). This, it ¡seems obvious, necessarily follows from the fact that, whereas the act cuts off " rights, privileges and immunities ”, the status of an employer under the Unemployment Insurance Law involves, and is expressly denominated, a “ liability ” (see, e.g., Labor Law, §§ 560, 561, 562, 570, 572, 579), a duty to pay an “ excise tax.” (Matter of Cassaretakis, 289 N. T. 119, 127, affd. 319 U. S. 306; see, also, Matter of Burke, 267 App. Div. 127, 130.) Certainly, a deprivation of " immunities ’ ’ may not be read to confer an immunity from taxation and, just as surely, a loss of “ rights ” and “ privileges ” can hardly be said to grant a freedom from the" obligation to pay a tax. Taxation is an intensely practical business, and the courts do not deal in riddles in interpreting tax statutes.
There are surely better ways of dealing with the problems posed by communism and the Communist Party than by forced and unreal construction of statutes designed to serve entirely *90 different purposes. The plain fact is that our Unemployment Insurance Law was enacted to benefit the ‘ ‘ unemployed worker ’ ’ (Labor Law, § 501), not the employer, and it is the latter who is burdened with a tax in order to fulfill the purposes of the statute. The imposition of such a burden upon the Communist Party as employer cannot possibly be deemed the sort of ‘' right ” or “ privilege ’ ’ denied to the Party by the Communist Control Act. If Congress had been intent upon depriving the Communist Party of its ability to enter into contracts or hire employees, it could easily and unmistakably have ■ so provided. And, if our Legislature desired to prevent employees of the Communist Party from receiving unemployment insurance benefits, it could, I assume, have done so, but, in the absence of such legislation, the Industrial Commissioner may not bring about this result simply by coining a new legal concept, a privilege new to our law, ‘ ‘ the privilege to pay taxes ’ ’.
This disposes of the proceeding brought by the respondent employer; the Communist Party is subject to registration and taxation as an employer under the Unemployment Insurance Law. And, that being so, it follows that the Appellate Division was also correct in holding, in the proceeding instituted by the respondent Albertson, that he had met all qualifications under the law and was entitled to unemployment benefits.
I would affirm the order appealed from in all respects.

. His employment with the Communist Party has been treated as essential to qualify him for such benefits.

. Paragraph (c) of subdivision 1 of section 560 does not appear in the reeodification which took effect in January of 1960.

. As noted in footnote 2, this paragraph does not appear in the recent reeodifieation of section 560 which became effective January 1, 1960. It seems to have been omitted for technical considerations and without any regard to underlying policy.